## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ISABEL LONGORIA and CATHY MORGAN, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| WARREN K. PAXTON, in his official capacity as Attorney General of Texas, KIM OGG, in her official capacity as Harris County District Attorney, SHAWN DICK, in his official capacity as Williamson County District Attorney, and JOSÉ GARZA, in his official capacity as Travis County District Attorney, | § § § § § § § § § § | Case No. 5:21-CV-1223-FB |
| Defendants. | § | |

## OPPOSED MOTION FOR PRELIMINARY INJUNCTION

This Court should grant a preliminary injunction to vindicate rights that are most vital to a thriving democracy: the right to free speech and the right to vote. Plaintiff Isabel Longoria, who serves as Elections Administrator for Harris County, and Plaintiff Cathy Morgan, who serves as a volunteer deputy registrar in Williamson and Travis Counties, want to encourage Texas voters to exercise their fundamental right to vote and to inform them about the lawful methods for doing so. Among other things, they want to encourage, suggest, and request that voters who are or may be eligible to vote by mail submit a timely application to do so. But new Texas laws, Sections 276.016(a)(1) and 31.129 of the Election Code, now make it both a crime and civil infraction—punishable by a mandatory minimum of six months of imprisonment, up to $10,000 in fines, and other potential civil penalties—to "solicit" such vote-by-mail applications.

Section 276.016(a)(1) and Section 31.129, as applied to violations of Section 276.016(a)(1), collide with the First Amendment because Section 276.016(a)(1) is a content- and viewpoint-based restriction on speech, as its application turns on the topic being discussed and the viewpoint expressed by the speaker. Specifically, it prevents Longoria and Morgan from discussing applications to vote by mail in their official capacity if they are soliciting (*i.e.*, among other things, eliciting, requesting, promoting, directing, or encouraging) a person to apply for a mail-in ballot. But it does not prevent expressing the opposite viewpoint and discouraging an eligible voter from requesting an application to vote by mail. Such a one-sided restriction on speech is *per se* unconstitutional. *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019). At a minimum, as a content-based restriction, Section 276.016(a)(1) triggers strict scrutiny, which the State cannot satisfy. The law is not narrowly tailored to any legitimate, much less compelling, government interest. There is no legitimate purpose in suppressing speech in order to suppress the lawful exercise of the right to vote.

Sections 276.016(a)(1) and 31.129 apply now, in the weeks and months leading up to the primary election on March 1, 2022. Voters may request applications to vote by mail beginning on January 1, 2022, and must do so by February 18, 2022. Plaintiffs therefore already have and will continue to suffer irreparable harm, and they accordingly request a preliminary injunction by no later than February 14, 2022, to prevent enforcement of Sections 276.016(a)(1) and 31.129.

## STATEMENT OF FACTS

### A.   Relevant Texas election law

Texas conducts elections in its 254 counties and more than 1,200 cities pursuant to the Texas Election Code. The county tax assessor-collector and county clerk manage voter registration and election administration, respectively, by default under the Elections Code. *See, e.g.*, TEX. ELEC. CODE §§ 12.001, 67.007, 83.002. The Election Code, however, alternatively permits counties to appoint a "county elections administrator" and to transfer all voter registration and election administration duties to that individual. *Id.* §§ 31.031, 31.043.

To that end, in November 2020, Harris County established the office of the Harris County Elections Administrator. Plaintiff Isabel Longoria was appointed to that position by the Harris County Election Commission. *See id.* § 31.037. As Elections Administrator, Longoria is responsible for carrying out statutory functions outlined by state and federal law, including overseeing the conduct of elections, providing information concerning early voting to individual voters, and distributing official applications to vote by mail to eligible voters. *See, e.g.*, *id.* §§ 31.043–31.045, 83.002, 85.007. To the extent she has an employer, Longoria is a public employee of the county, not the State. *See Krier v. Navarro*, 952 S.W.2d 25, 29 (Tex. App.—San Antonio 1997, pet. denied) (elections administrator is an "agent or employee of the county"). As a result, Longoria is subject to certain forms of discipline and/or termination only upon action by the Harris County Elections Commission, which may remove her for good cause and with approval by a majority vote of the Harris County Commissioners Court. *See* TEX. ELEC. CODE § 31.037. In this way, the Election Code "shield[s] the position of elections administrator from

removal except upon compliance with the statutory safeguards established in the Election Code." *Krier*, 952 S.W.2d at 30.

Counties may also appoint volunteer deputy registrars (each, a "VDR") to encourage and facilitate voter registration. *See* Tex. Elec. Code §§ 13.031, 13.033, 13.041. Plaintiff Cathy Morgan is among the thousands of individuals across Texas appointed to serve as a VDR.

Beyond in-person voting at designated polling locations, Texas law provides for early voting by mail in certain circumstances. For example, any voter who is at least 65 years old, sick or disabled, confined due to childbirth, out of the country on election day, or, in certain cases, confined in jail is eligible for early voting by mail. *Id.* §§ 82.001–82.008. So long as such voters timely request applications to vote by mail, the elections administrator or county clerk "shall" provide an application and, if the applicant is deemed eligible, a mail-in ballot. *Id.* §§ 84.001, 84.012, 86.001(b). Millions of Texans are eligible and entitled to vote by mail, and approximately 980,000 did so in the 2020 presidential election. *See* United States Election Assistance Commission, *Election Administration and Voting Survey 2020 Comprehensive Report* at 34 (Aug. 16, 2021), available at https://www.eac.gov/sites/default/files/document_library/files/2020_EAVS_Report_Final_508c.pdf.

Texas does not maintain a permanent list of voters eligible to vote by mail. Instead, many voters must apply to vote by mail at least annually, beginning on the first day of the calendar year and at least eleven days before an election. Tex. Elec. Code

§§ 86.0015 (a), (b-1). To vote by mail in the primary on March 1, 2022, voters must return

a mail ballot application between January 1 and February 18, 2022. *Id.* § 86.0015(b-1).

**B.    Sections 276.016(a)(1) and 31.129 impose criminal and civil liability for speech encouraging eligible or potentially eligible voters to exercise their right to vote by mail.**

On September 7, 2021, Texas enacted Senate Bill 1 ("SB 1"). Among other things,

Section 7.04 of SB 1, codified at Section 276.016 of the Texas Election Code, makes it a

crime for a public official or election official to solicit an application to vote by mail from

anyone, even if a voter is eligible to do so. Section 276.016(a)(1) provides that a "public

official or election official commits an offense if the official, while acting in an official

capacity knowingly . . . solicits the submission of an application to vote by mail from a

person who did not request an application." An elections administrator is an "election

official" as defined in the Election Code. TEX. ELEC. CODE § 1.005(4-a)(C). A VDR is a

public official because he or she is "appointed" as an agent of the county. *See* TEX. GOV'T

CODE § 22.304 (a "public official" is anyone that is "elected, selected, appointed,

employed, or otherwise designated as an officer, employee, or agent of this state . . . [or]

political subdivision").

Subject to two narrow exceptions (the "general information" and "candidate for

office" exceptions, each discussed below), any form of solicitation by a public official or

election official is a crime, regardless of whether the solicited individual is eligible to vote

by mail. *See id.* § 276.016(e). Under Section 276.016(a)(1), that crime is punishable as a

state jail felony, which carries a mandatory minimum of six months of imprisonment

and a fine of up to $10,000. TEX. ELEC. CODE § 276.016(b); TEX. PENAL CODE § 12.35(a)–

(b). By contrast, it is not a crime for a public official or elections official to *discourage* an

eligible voter to vote by mail. In addition to criminal penalties for violating Section 276.016(a)(1), SB 1 subjects election officials who violate provisions of the Election Code, including Section 276.016(a)(1), to potential liability to the State for civil penalties, which can include termination of employment and loss of employment benefits. TEX. ELEC. CODE § 31.129; TEX. CONST. art. XI § 1 (counties are legal subdivisions of the State). Sections 276.016(a)(1) and 31.129 (and the rest of SB 1) went into effect on December 2, 2021.

**C.      SB 1 chills Plaintiffs' protected speech.**

Plaintiff Isabel Longoria strongly believes in encouraging and enabling all eligible Harris County voters to exercise their right to cast a lawful ballot. Accordingly, Longoria routinely encourages those who are (or who may be) eligible to vote by mail to request an application to do so. Declaration of Harris County Elections Administrator Isabel Longoria in Support of Motion for Preliminary Injunction, attached hereto as <u>Exhibit A</u>, ¶ 5. She engages in a wide manner of public education and awareness efforts, as well as interactions with individual voters to ensure that those voters have the information needed to vote by mail, if so desired. Ex. A ¶¶ 9–10. Indeed, for many voters, including elderly voters, voters with disabilities, and voters confined due to childbirth, voting by mail may reduce significant real-world barriers to casting a ballot. Ex. A ¶¶ 6–7. And for many of these voters—including many of those eligible due to sickness, disability, and incarceration[1]—voting by mail is the *only* way to exercise the right to vote.

---

[1] A voter confined in jail who is eligible to vote by mail may be permitted to vote by personal appearance at the discretion of the authority in charge of the jail. TEX. ELEC. CODE § 82.004(b).

Longoria seeks to exercise her First Amendment right to encourage eligible voters to lawfully request applications to vote by mail. Due to the chilling effect of Section 276.016(a)(1), Longoria cannot give truthful advice regarding applications to vote by mail because doing so could subject her to prosecution or civil penalties for encouraging, counseling, directing, or otherwise soliciting such applications. Ex. A ¶¶ 14–15, 18.

Since Section 276.016(a)(1) became effective on December 2, 2021, Longoria has planned to engage in speeches and hold voter-outreach events but has been unable to do so for fear of criminal prosecution and civil penalties. Ex. A ¶ 16. Longoria would like to engage in community outreach, education, and know-your-rights events (and bring mail-in voting applications to these events) in advance of the February 18, 2022, deadline to request a mail-in voting application but cannot for fear that her communications will be construed as soliciting mail-in voting applications. Ex. A ¶¶ 17, 20. She also would like to utilize her communications budget to promote mail-in voting, including through flyers and social media. Ex. A ¶ 19. But, as it stands, Longoria cannot do so due to the threat of prosecution and civil penalties. Ex. A ¶¶ 14–16, 18–21.

Plaintiff Cathy Morgan faces the same concerns, and her speech is likewise chilled for fear of criminal prosecution. Declaration of Cathy Morgan in Support of Motion for Preliminary Injunction, attached hereto as Exhibit B, ¶¶ 18–21. As a VDR, Morgan has engaged in door-to-door outreach to registered voters and has staffed a voter registration booth near the University of Texas at Austin campus. Ex. B ¶ 10. In the course of her work as a VDR, Morgan has routinely communicated with voters about the option and

benefits of voting by mail, including providing eligible voters with information and encouraging them to utilize mail-in voting when appropriate. Ex. B ¶¶ 14–15. Specifically, Morgan desires to inform college students who cannot travel to their home county that they can potentially vote by mail, as she has done in the past. Ex. B ¶¶ 14, 20. Although the "general information" exception will permit her to continue providing general information to eligible voters, she can no longer proactively suggest that eligible but unaware voters request an application to vote by mail (to which they are legally entitled) as she has in the past and desires to do presently. Ex. B ¶¶ 14–15, 18–22.

Though Plaintiffs Longoria and Morgan are currently being deprived of their First Amendment rights, which in and of itself justifies preliminary injunctive relief, the proximity of the primary election on March 1, 2022, and the upcoming mail-in ballot request period between January 1 and February 18, 2022, increases the urgency of this Motion and the relief requested herein.[2]

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a).

## ARGUMENT

A preliminary injunction is warranted when plaintiffs demonstrate that "(1) they are 'likely to succeed on the merits,' (2) they are 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [their] favor,' and (4) 'an injunction is in the public interest.'" *McDonald v. Longley*, 4 F.4th 229, 255 (5th Cir.

---

[2] In addition to the factual background provided here, Plaintiffs incorporate and adopt by reference each and every allegation in their First Amended Complaint.

2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

All four factors weigh heavily in favor of granting a preliminary injunction here. Plaintiffs Longoria and Morgan are likely to succeed on the merits of their claim, because Section 276.016(a)(1) is both a viewpoint- and content-based restriction and such suppression of speech cannot be justified. Absent an injunction, Longoria and Morgan will also suffer irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (citations omitted); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981) (explaining that when a court finds constitutional rights being "either threatened or in fact being impaired," "a finding of irreparable injury" is mandated). Indeed, as the next election approaches, and in advance of each subsequent election, such irreparable harm will only compound.

The balance of equities and public interest also strongly support preliminary relief. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church*, 697 F.3d at 298 (citation and internal quotation marks omitted). To overcome the irreparable injury arising from the State's infringement on Plaintiffs' First Amendment rights, Defendants must produce "powerful evidence of harm to its interests" to tip the equities in their favor. *Id.* at 297. They cannot. Defendants cannot articulate, let alone prove, harm to their interests caused by Plaintiffs' exercise of their First Amendment rights by encouraging eligible voters to vote by means to which they are legally entitled. As a result, Plaintiffs satisfy each of the

preliminary injunction requirements and are entitled to the requested relief.

**A.** **Plaintiffs are likely to succeed on the merits because Section 276.016(a)(1) is content- and viewpoint-based and cannot satisfy First Amendment scrutiny.**

Applicable to states through the Fourteenth Amendment, the First Amendment prohibits enactment of laws "abridging the freedom of speech." U.S. CONST. amend. I. Among "the most basic of [First Amendment] principles" is that the "government has no power to restrict expression because of its messages, its ideas, its subject matter, or its content." *Brown v. Entm't Merch. Ass'n*, 564 U.S. 786, 790–91 (2011) (citation and internal quotation marks omitted). Content-based restrictions thus are presumptively invalid and trigger strict judicial scrutiny. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional."). Laws subject to strict scrutiny will not stand unless the government proves that they are "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163.

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* A law is content based if, on its face, it "defin[es] regulated speech by particular subject matter," or "by its function or purpose." *Id.* A law is also content-based if it is facially neutral but "cannot be justified without reference to the content of the regulated speech," or was adopted "because of disagreement with the message [the speech] conveys." *Id.* at 164 (internal quotation marks omitted); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 27 (2010) (explaining that a statute "regulates speech on the basis of its content"

where a person's ability to speak "depends on what they say"). Even if its enactment is based on a "benign motive, content-neutral justification, or lack of animus towards the ideas contained in the regulated speech," any law that "target[s] speech based on its communicative content" will be subject to strict scrutiny. *Reed*, 576 U.S. at 163.

Viewpoint-based restrictions are subject to an even more demanding standard, as they face a virtually *per se* rule of invalidity. *See Iancu*, 139 S. Ct. at 2299; *Rosenberger*, 515 U.S. at 829 ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."). Put differently, the government has no authority to "license one side of a debate to fight freestyle, while requiring the other [side] to follow Marquis of Queensberry rules.'" *R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992). But that is exactly what the State has done in enacting Section 276.016(a)(1).

1.   **Section 276.016(a)(1) triggers the most stringent First Amendment scrutiny.**

a.   **Section 276.016(a)(1) is a content- and viewpoint-based restriction on speech.**

Section 276.016(a)(1) restricts and criminalizes the solicitation of the submission of an application to vote by mail from a person who did not request an application—even if that person is statutorily eligible to vote by mail. Specifically, it provides that a "public official or election official commits an offense" when she "knowingly . . . solicits the submission of an application to vote by mail from a person who did not request an application." TEX. ELEC. CODE § 276.016(a)(1). Section 276.0016(e) sets forth two exceptions to the general prohibition on solicitation. Section 276.016(a)(1) does not apply if the public official or election official (1) "provide[s] general information about voting by

mail, the vote by mail process, or the timelines associated with voting to a person or the public" or (2) engages in solicitation "while acting in the official's capacity as a candidate for a public elective office." *Id.* § 276.016(e).

The term "solicit," as it is used in Section 276.016(a)(1), plainly includes speech. *See, e.g.*, TEX. PENAL CODE § 15.03(a) (defining the offense of criminal solicitation as "request[ing], command[ing], or attempt[ing] to induce another" to commit a felony); *see also Ex Parte Victorick*, 453 S.W.3d 5, 15 (Tex. App.—Beaumont 2014, pet. ref'd) (citing WEBSTER'S THIRD NEW INT'L DICTIONARY 2169 (2002)) ("'Solicit' is not defined in section 33.021 of the Texas Penal Code, and could be understood by the jury by its commonly defined terms, which include, 'to approach with a request or plea' and 'to endeavor to obtain by asking or pleading[.]'"); *Coutlakis v. State*, 268 S.W.2d 192, 258 (Tex. Crim. App. 1954) ("The word 'solicit' is one of common usage and its meaning is simple and not subject to any peculiar usage. As here used, it means 'to entice, to request, to incite' . . . ."). Section 276.016(a)(1) accordingly prohibits "enticing," "requesting," "commanding," "directing," or otherwise encouraging others to request an application to vote by mail. All are typically accomplished through speech.

Texas courts interpreting statutes based on solicitation confirm the point that "solicitation" encompasses speech, including speech requesting the conduct at issue. *See, e.g., Smith v. State*, 959 S.W.2d 1, 22 (Tex. App.—Waco 1997, pet. ref'd) ("[W]e determine 'solicit' to mean the taking of some action 'which the relation of the parties justifies in construing into a serious request'" (citations omitted)); *Martinez v. State*, 696 S.W.2d 930, 932 (Tex. App.—Austin 1985, pet. ref'd) (finding solicitation where police officer

"asked for" $150 from motorist in return for not issuing traffic citation).

Section 276.016(a)(1) is accordingly a content-based restriction on speech because its prohibition depends on the content of a person's speech: If a person's speech entices, requests, commands, directs, or otherwise encourages another person to request an application to vote by mail, then criminal and civil penalties attach. *See Reed*, 576 U.S. at 163. If the speech is about a different topic, they do not. *See id.* Here, the speech Plaintiffs wish to engage in falls within this definition and neither exception applies. Although Plaintiffs want to share general information about applying to vote by mail, they also, more importantly, want to entice and encourage eligible voters to use that information to request a timely application to vote by mail.

Not only does Section 276.016(a)(1) regulate speech on the basis of its content, but it is also a viewpoint-based rule. As it stands, speech encouraging or requesting the submission of an application to vote by mail is a crime. Discouraging the submission of an application to vote by mail, on the other hand, is not. Indeed, while Plaintiffs could face at least six months of imprisonment for encouraging an eligible voter who faces difficulties appearing at a polling place on election day to request an application to vote by mail, they would face no consequence for telling eligible voters that they should never consider voting by mail and instead should only vote in person. Even worse, it would be a crime under Section 276.016(a)(1) for Plaintiffs to tell an eligible voter confined to a nursing home or jail cell that he or she should apply to vote by mail in order to avoid being disenfranchised, but it would not be a crime to encourage the same person not to fill out an application and thus forfeit the right to vote. Because the restriction in

Section 276.016(a)(1) emanates from the content of the official's speech and their views on voting by mail, it is a presumptively unconstitutional viewpoint- and content-based restriction on speech. *See Reed*, 576 U.S. at 163; *Rosenberger*, 515 U.S. at 828. Section 31.129 of the Election Code, as applied to violations of Section 267.016(a)(1), is unconstitutional for the same reasons.

### b.   No First Amendment exception applies.

Section 276.016(a)(1) does not fit within any established exception to the First Amendment. *See United States v. Alvarez*, 567 U.S. 709, 717–18 (2012) (collecting exceptions). There is a well-settled exception for "speech integral to criminal conduct," which usually justifies prohibitions on solicitation of a crime. *Id.*; *see, e.g.*, *United States v. Stevens*, 559 U.S. 460, 468–69 (2010); *United States v. Williams*, 553 U.S. 285, 298 (2008); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498, 502 (1949). But that exception does not apply to the ban on "solicitation" of requests for applications to vote by mail because it is perfectly lawful for Texans to engage in the conduct being solicited— *i.e.*, to request an application to vote by mail.

In fact, requesting an application to vote by mail is a prerequisite to a statutory entitlement for those who qualify—and a prerequisite to exercising a fundamental constitutional right for those who are unable to vote in person. Far from being "speech integral to criminal conduct," the solicitation of mail ballot applications is actually integral to lawful, constitutionally protected conduct.

### c.   Defendants are acting as a sovereign, not as an employer.

Section 276.016(a)(1) also is subject to the full force of the First Amendment, and

not lesser scrutiny under the Supreme Court's public-employee speech cases. *See, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Bd. of Education*, 391 U.S. 563 (1968). Under that line of cases, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. As *Garcetti* and *Pickering* emphasize, the government has leeway to impose "employer discipline" in ways that are typical of a private employer because of an employer-employee relationship. *See Garcetti*, 547 U.S. at 418 ("A government entity has broader discretion to restrict speech *when it acts in its role as employer*, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." (emphasis added)). But when the government acts as a sovereign, rather than as an employer, as is the case under Section 276.016(a)(1), a restriction on speech is subject to the full First Amendment protections.

As both Texas and federal courts have explained, the State acts as a sovereign, not an employer, when it imposes criminal penalties because a state's ability to impose criminal punishment derives from its sovereign status. *See In re Kendall*, 712 F.3d 814, 826–27 (3d Cir. 2013) ("[T]he Virgin Islands Supreme Court acted as sovereign, not as public employer, by criminally punishing Kendall's speech."); *Ex parte Perry*, 483 S.W.3d 884, 911–12 (Tex. Crim. App. 2016) ("When government seeks criminal punishment, it indeed acts as sovereign and not as employer or speaker."); *see also Healy v. James*, 408 U.S. 169, 202 (1972 (Rehnquist, J., concurring) ("Cases such as *United Public Workers v.*

*Mitchell*, 330 U.S. 75 (1947), and [*Pickering*] make it equally clear that the government in its capacity as employer also differs constitutionally from the government in its capacity as the sovereign executing criminal laws."); *Oregon v. Ice*, 555 U.S. 160, 170 (2009) ("Beyond question, the authority of States over the administration of their criminal justice systems lies at the core of their sovereign status."). Put another way, criminal punishment is not "employer discipline." Private employers sometimes fire their employees for their speech, but they cannot send them to jail.

At the outset, it bears noting that, if the Court finds that Section 276.016(a)(1) is unconstitutional, the civil penalties provision in Section 31.129 becomes inapplicable as against the anti-solicitation provision of Section 276.016(a)(1) because there would be no underlying criminal violation to which Section 31.129 could apply. This result would hold regardless of the Court's decision on Count II of the First Amended Complaint.

Regardless, however, the imposition of fines and other civil penalties against Plaintiff Longoria[3] by the State under Section 31.129 is independently infirm under the First Amendment because *Pickering* and its progeny do not apply to curtail First Amendment protections here. The civil penalties in Section 31.129, when predicated on a violation of Section 267.016(a)(1), also involve the exercise of sovereign power as opposed to traditional "employer discipline" like demotion or termination. Like criminal punishments, the power to impose fines or other civil punishments derives from a state's power as sovereign and is beyond the scope of any "managerial discipline" a private

---

[3] Section 31.129 applies only to "election officials" and is thus inapplicable to Plaintiff Morgan.

employer could impose. *Garcetti*, 547 U.S. at 424; *see also Pickering*, 391 U.S. at 547 (distinguishing "criminal penalties and damage awards" from mere threat of "dismissal from employment"); *see also HUD v. Rucker*, 535 U.S. 125, 135 (2002) (explaining that the government acts in its capacity as a sovereign, rather than as a landlord of property, when it "attempt[s] to criminally punish or *civilly regulate* [tenants] as members of the general populace." (emphasis added)). In other words, *Pickering* and its progeny are about the government's ability to "leverage the employment relationship" to restrict employee speech through "employer discipline" in the same ways that private employers can restrict their employee's speech. But just as employers do not jail their employees, they also do not heap fines or civil penalties on them.

Further confirming the point, Defendants, who are charged with enforcing Sections 276.016(a)(1) and 31.129, do not employ Plaintiff Longoria and lack the power to remove her absent the exercise of sovereign power. Longoria is a public employee who is appointed, removable, and subject to certain forms of discipline by the Harris County Election Commission for good cause and upon approval of the Harris County Commissioners Court. *See* TEX. ELEC. CODE §§ 31.032, 31.036, 31.037. She is an employee of and subject to termination by a county entity, not the State. The imposition of criminal or civil penalties on Longoria by Defendants, including termination or loss of benefits, thus would involve the exercise of sovereign power rather than the power of the State as an employer. Accordingly, Defendants cannot rely on public-employee First Amendment jurisprudence to justify their restrictions on Longoria's speech. Rather, the First Amendment applies with full force here.

2. **Section 276.016(a)(1) fails strict scrutiny because it is not narrowly tailored to serve a compelling state interest.**

Section 276.016(a)(1) and Section 31.129, as applied to violations of Section 267.016(a)(1), are manifestly unconstitutional because Section 267.016(a)(1) is viewpoint-based. The test for such restrictions is simple: If a restriction "is viewpoint-based, it is unconstitutional." *Iancu*, 139 S.Ct. at 2299. The inquiry ends there.

Even if it were analyzed as merely a content-based restriction, Section 276.016(a)(1) would still be unconstitutional because it cannot satisfy strict scrutiny. *See Nat'l Inst. of Family & Life Advoc. v. Becerra*, 138 S.Ct. 2361, 2371 (citing *Reed*, 576 U.S. at 163) (explaining that under strict scrutiny, such restrictions "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests"). Here, the State has no interest at all, much less a compelling one, in preventing public or election officials from soliciting lawful applications to vote by mail. There is no legitimate justification for restricting speech that encourages Texans to lawfully request an application to vote by mail. This critical point should be the beginning and end of the analysis.

If anything, public and election officials have a compelling interest to *engage* in such speech because voting itself is a fundamental right and voting by mail is a perfectly lawful way for millions of Texans to exercise that fundamental right. For some Texans, it is the only way they can exercise that fundamental right. *See* TEX. ELEC. CODE § 82.004 (permitting early voting by mail for certain incarcerated individuals who are, without express permission from authorities, forbidden from voting in person on election day); *see also O'Brien v. Skinner*, 414 U.S. 524, 531 (1974) (holding that New York violated the

Fourteenth Amendment when it denied eligible voters access to absentee voting because they were in jail). For these voters, any encouragement to exercise their right to vote is necessarily encouragement to submit an application to vote by mail.

Even if the State could articulate a compelling governmental interest, Sections 276.016(a)(1) and 31.129 are not narrowly tailored to further that interest because there are alternative channels to address the concern. For example, the Election Code independently prohibits public and election officials from affirmatively sending an application to vote by mail to a voter who did not request one. TEX. ELEC. CODE § 276.016(a)(2). That prohibition is conduct-based, not content-based, and thus does not implicate the First Amendment. It underscores that the State has alternatives to censorship of speech. In short, there is no justification for the State to punish a public or election official for speech promoting a lawful means of voting. Plaintiffs are accordingly likely to succeed on the merits.

B.   **Plaintiffs will suffer irreparable harm in the absence of an injunction because even the momentary loss of First Amendment rights constitutes irreparable injury.**

Absent a preliminary injunction, Plaintiffs Longoria and Morgan will suffer irreparable harm through the chilling effect that arises from the threat of imprisonment and civil penalties for encouraging others to lawfully seek an application to vote by mail. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373; *see Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (citing *Elrod* for same). The irreparable injury here is even more acute because of the collateral harm it does to Texans' fundamental right to vote. Each passing day in which Plaintiffs' speech

is stifled by threat of criminal consequences is another day that they cannot provide important information and education regarding applications to vote by mail, thus increasing the likelihood that certain individuals will be unable to vote at all.

A preliminary injunction is also critical to vindicate these First Amendment freedoms before the upcoming primary election in March. In particular, the need for the protected speech is most pressing by February 14, 2022, given the time needed for requesting, obtaining, and then submitting a mail-in ballot. Ex. A ¶ 21. And without an injunction, Plaintiffs would suffer similar irreparable harm again and again as Texas continues to hold elections in the future. Ex. A ¶ 21.

**C.   The balance of equities favors an injunction because the State can demonstrate no "powerful harm to its interests."**

The threatened and ongoing injury to Plaintiffs outweighs any potential harm that an injunction might cause Defendants. *See Deerfield Med. Ctr.*, 661 F.2d at 332. Without a preliminary injunction, Plaintiffs will suffer irreparable injury to their constitutional rights as described above. On the other side, Defendants will suffer no harm from the issuance of an injunction. Defendants are not harmed by public officials encouraging citizens to use a lawful method to exercise their fundamental right to vote.

Because Defendants cannot show that a countervailing interest exists, much less a "powerful" harm to one, the balance of equities favors Plaintiffs.

**D.   A    preliminary    injunction    barring    enforcement    of Section 276.016(a)(1) furthers the public interest.**

Finally, a preliminary injunction that prevents Defendants from violating fundamental constitutional rights serves the public interest. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter.*,

732 F.3d at 539 (citation and internal quotation marks omitted); *see also, e.g.*, *RTM Media, L.L.C. v. City of Houston*, 518 F. Supp. 2d 866, 875 (S.D. Tex. 2007) ("It is clearly in the public interest to enjoin an ordinance that restricts the public's constitutional right to freedom of speech."); *Wexler v. City of New Orleans*, 267 F. Supp. 2d 559, 568–69 (E.D. La. 2003) ("The public interest is best served by enjoining the effect of any ordinance which limits potentially constitutionally protected expression until it can be conclusively determined that the ordinance withstands constitutional scrutiny."). Worse, Section 276.016(a)(1)'s one-sided prohibition on speech distorts the political process, where constitutional free-speech guarantees have their "fullest and most urgent application." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971). These interests are made all the more urgent as time for those eligible to apply to vote by mail in advance of the March 1, 2022 election dwindles. As a result, a preliminary injunction barring enforcement of Section 276.016(a)(1) and Section 31.129, as applied to a violation of Section 267.016(a)(1), is firmly in the public interest and justifies preliminary relief.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court enter a preliminary injunction by February 14, 2022, to enjoin Defendants from enforcing Section 276.016(a)(1) and Section 31.129 of the Texas Election Code, as applied to a violation of Section 276.016(a)(1), until final resolution of this matter.

Dated: December 28, 2021

/s/ Christian D. Menefee
Christian D. Menefee
Harris County Attorney
Texas Bar No. 24088049
Christian.Menefee@cao.hctx.net
Jonathan Fombonne
First Assistant Harris County Attorney
Texas Bar No. 24102702
Jonathan.Fombonne@cao.hctx.net
Tiffany Bingham^
Managing Counsel
Texas Bar No. 24012287
Tiffany.Bingham@cao.hctx.net
Sameer S. Birring
Assistant County Attorney
Texas Bar No. 24087169
Sameer.Birring@cao.hctx.net
Christina Beeler^
Assistant County Attorney
Texas Bar No. 24096124
Christina.Beeler@cao.hctx.net
Susannah Mitcham^
Assistant County Attorney
Texas Bar No. 24107219
Susannah.Mitcham@cao.hctx.net
OFFICE OF THE HARRIS COUNTY ATTORNEY
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5101
Facsimile: (713) 755-8924

*Attorneys for Plaintiff:* ISABEL
LONGORIA

\* Application for *pro hac vice* forthcoming
^ Application for admission pending

Respectfully submitted,

/s/ Sean Morales-Doyle
Sean Morales-Doyle
N.Y. Bar No. 5646641;
Ill. Bar No. 6293421 (inactive)
Andrew B. Garber*
N.Y. Bar No. 5684147
Ethan J. Herenstein*
N.Y. Bar No. 5743034
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
Telephone: (646) 292-8310
Facsimile: (212) 463-7308
sean.morales-doyle@nyu.edu
herensteine@nyu.edu
andrew.garber@nyu.edu

/s/ Elizabeth Y. Ryan
Paul R. Genender
Texas State Bar No. 00790758
Elizabeth Y. Ryan
Texas State Bar No. 24067758
Matthew Berde*
Texas State Bar No. 24094379
Megan Cloud
Texas State Bar No. 24116207
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-8158
Facsimile: (214)746-7777
Liz.Ryan@weil.com
Paul.Genender@weil.com
Matt.Berde@weil.com
Megan.Cloud@weil.com

-and-

Alexander P. Cohen*
Texas State Bar No. 24109739

22

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8020
Facsimile: (212) 310-8007
Alexander.Cohen@weil.com


*Attorneys for Plaintiffs:*
ISABEL LONGORIA and
CATHY MORGAN

## **CERTIFICATE OF CONFERENCE**

On December 22, 2021, the undersigned counsel attempted to confer with Defendants' counsel concerning the relief sought in this Opposed Motion for Preliminary Injunction and regarding a proposed modified briefing schedule. The undersigned did not receive a response from counsel for the State or the Williamson County District Attorney on their position regarding the Motion and proposed modified briefing schedule prior to filing this Motion on December 28, 2021. Counsel for the Travis County District Attorney takes no position on the Motion or the proposed modified briefing schedule. The Harris County District Attorney agrees to abate prosecution during the pendency of the lawsuit.

*/s/ Sean Morales-Doyle*
Sean Morales-Doyle

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on December 28, 2021, the foregoing document was filed electronically with the United States District Court for the Western District of Texas via CM/ECF. As such, this Opposed Motion for Preliminary Injunction was served on all counsel who have consented to electronic service. This Opposed Motion for Preliminary Injunction will also be served via personal service.

*/s/ Elizabeth Y. Ryan*
Elizabeth Y. Ryan