**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ISABEL LONGORIA and CATHY MORGAN, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| WARREN K. PAXTON, in his official capacity as Attorney General of Texas, KIM OGG, in her official capacity as Harris County District Attorney, SHAWN DICK, in his official capacity as Williamson County District Attorney, and JOSÉ GARZA, in his official capacity as Travis County District Attorney, | § § § § § § § § § § | Case No. 5:21-CV-1223-XR |
| Defendants. | § | |

<u>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 3

ARGUMENT ..................................................................................................... 4

I.    The Court Has Jurisdiction and Should Exercise It .................................... 4

    A.    Plaintiffs Have Standing to Challenge Section 276.016(a)(1) and Sovereign Immunity Does Not Preclude Them From Doing So ................................................................................... 4

    B.    Plaintiff Longoria Has Standing to Challenge Section 31.129 and Sovereign Immunity Does Not Preclude Her From Doing So .................................................................................... 8

    C.    *Pullman* Abstention is Inappropriate ............................................ 11

II.    Plaintiffs Are Likely to Succeed on the Merits ......................................... 12

    A.    Section 276.016(a)(1) Violates the First Amendment ..................... 12

    B.    Section 31.129 Violates the First Amendment .............................. 15

III.    A Preliminary Injunction Would Redress Plaintiffs' Irreparable Harm ................................................................................................ 16

    A.    Plaintiffs Have Established Irreparable Harm .............................. 16

    B.    Defendant Paxton's Troubling Theory of Preliminary Injunctions is Baseless .................................................................... 17

IV.    The Balance of Equities and Public Interest Favor Relief ........................ 19

CONCLUSION ................................................................................................. 20

## INTRODUCTION

Plaintiffs Isabel Longoria and Cathy Morgan ask the Court to preliminarily enjoin the enforcement of Texas Election Code §§ 276.016(a)(1) and 31.129 (together, the "challenged provisions") to enable them to speak freely about applications for mail-in ballots in advance of the March primary election. The challenged provisions, passed as part of Senate Bill 1 ("SB1") during the second special legislative session in 2021, punish election officials and public officials who "solicit" mail-in application ballots with jail time or civil penalties—a content- and viewpoint-based restriction that violates the First Amendment.

Instead of seriously defending the challenged provisions on the merits, Defendant Paxton raises a bevy of collateral objections to Plaintiffs' motion for a preliminary injunction. He contests the motion on grounds such as standing, sovereign immunity, and the Court's power to grant effective relief. He argues that the definition of "solicit" is clear enough to assuage Plaintiffs' fears of criminal prosecution and limitless civil penalties and yet ambiguous enough to warrant abstention. He even argues that the fear of criminal prosecution of speech is not the sort of irreparable harm that can be remedied by a preliminary injunction. These arguments are all unavailing.

Defendant Dick, meanwhile, insists that he is immune from suit because he is not actively prosecuting Plaintiff Morgan.[1] His arguments misunderstand and misapply standing, sovereign immunity, and abstention principles.

---

[1]    Defendants Ogg and Garza did not file oppositions to the Plaintiffs' motion for preliminary injunction pursuant to non-enforcement stipulations. *See* Dkt. Nos. 35 & 36.

Defendants' approach is unsurprising, as no state interest could justify the challenged provisions. Not only do the provisions impose criminal and severe civil punishment on speech on the basis of its viewpoint, content, and the identity of the speaker, they set out an irrational policy. They allow any person (including political parties) to solicit mail ballot applications except election officials and public officials, *i.e.*, the people most knowledgeable about the requirements for mail ballot applications and most likely to provide a trusted source of information for voters. The challenged provisions multiply the already substantial public confusion about mail-in voting while silencing election and public officials.

The Court should grant a preliminary injunction to alleviate the harm to Plaintiffs' free speech rights, as well as to the public interest.

## ARGUMENT

### I.    The Court Has Jurisdiction and Should Exercise It

#### A.  Plaintiffs Have Standing to Challenge Section 276.016(a)(1) and Sovereign Immunity Does Not Preclude Them From Doing So

<u>Standing</u>. Defendant Paxton and Defendant Dick suggest that Plaintiffs have failed to establish an injury in fact. *See* Defendant Paxton's Response to Plaintiffs' Motion for a Preliminary Injunction ("AG Br."), Dkt. No. 48, at 8; Defendant Shawn Dick's Response in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Dick Br."), Dkt. No. 47, at 10. In the pre-enforcement context, a plaintiff "suffer[s] an injury in fact if [s]he (1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) [her] intended future conduct . . . is arguably proscribed by

[the policy in question], and (3) the threat of future enforcement of the [challenged policies] is substantial." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020).

Where, as here, Plaintiffs bring a "pre-enforcement challenge[] to [a] recently enacted . . . statute[] that facially restrict[s] expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Id.* In the face of this presumption, Defendants argue that Plaintiffs have failed to present evidence that the district attorney defendants (the "DAs") have threatened to prosecute them. *See* AG Br. 6-11; Dick Br. 13. But Plaintiffs "need not show that the authorities have threatened to prosecute [them]." *Speech First,* 979 F.3d at 336. "[T]he threat is latent in the existence of the statute." *Id.* If a plaintiff "plainly belong[s] to a class arguably facially restricted by the [law]," that is enough to "establish[] a threat of enforcement." *Id.*

Plaintiffs each meet this requirement. First, Plaintiff Longoria is the Harris County Elections Administrator and qualifies as an election official whose speech is facially restricted by Section 276.016(a)(1). *See* Tex. Elec. Code § 1.005(4-a) (defining "election official" to include "an elections administrator"). Likewise, Plaintiff Morgan is a volunteer deputy registrar ("VDR") and therefore belongs to a class whose speech is facially restricted by the statute's application to "public officials." Although the term "public official" is not defined in the Election Code, it is defined elsewhere in SB1 to mean "any person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of this state, a government agency, a political subdivision, or any other public body established by state law." SB1 § 8.05, 2021 87th Leg. 2d Spec. Sess.

(Tex. 2021) (codified at Tex. Gov't Code § 22.304). Because VDRs are appointed to their position by a county official and "assume a role carefully regulated by the state to serve the citizens who register to vote as well as the public interest in the integrity of the electoral body," *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 393 (5th Cir. 2013), they qualify as public officials under Section 276.016(a)(1). That establishes a threat of enforcement sufficient to confer Article III standing.

Second, Plaintiffs' intended speech is proscribed by Section 276.016(a)(1). *See Speech First*, 979 F.3d at 335. Plaintiffs each intend to solicit mail-in ballot applications, which they believe includes encouraging eligible voters to request them. *See, e.g.*, Longoria Dep., Dkt. No. 49-1, at 85:24-25 (explaining that she does not "use social media to encourage voting by mail or to solicit mail ballot applications" because of the threat of criminal prosecution under Section 276.016(a)(1)); Morgan Dep., Dkt. No. 49-2, at 57:23-24 (explaining that she will not ask voters "[h]ave you considered ballot by mail?" because of the threat of criminal prosecution under Section 276.016(a)(1)). Longoria has also encouraged and intends to further encourage eligible persons who are incarcerated to vote. As they can generally only vote by mail, that action is tantamount to soliciting their mail-in ballot applications. As explained in Plaintiffs' motion, they believe Section 276.016(a)(1) prohibits giving this encouragement if not first asked. *See* Plaintiffs' Motion for Preliminary Injunction ("Motion"), Dkt. No. 7, at 12. That Defendant Paxton advances a narrower view of "solicit" that requires Plaintiffs to try to "persuade" voters to apply for a mail ballot does not alleviate their reasonable fear. AG Br. at 8. By

prohibiting Plaintiffs' speech, the provision chills—worse yet, criminalizes—their protected speech. Plaintiffs therefore have standing to challenge Section 276.016(a)(1).

Arguing otherwise, Defendant Paxton points to numerous parts of Section 276.016(a)(1) that he contends are somehow unclear. But the vagueness of Section 276.016(a)(1) itself has a chilling effect on Plaintiffs' protected speech and is "sufficient injury to ensure that [Plaintiffs have] a personal stake in the outcome of the controversy." *Speech First*, 979 F.3d at 322 (internal quotation marks omitted).[2]

<u>Sovereign Immunity</u>. Likewise unavailing is Defendant Dick's argument that sovereign immunity precludes Plaintiff Morgan from challenging Section 276.016(a)(1).[3] For the *Ex Parte Young* exception to sovereign immunity to apply, a "state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908)). Once a plaintiff establishes a threat of enforcement sufficient "to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy [the connection to the enforcement] element of *Ex Parte Young*." *Id.* at 1002.

Here, Defendant Dick (along with Defendants Ogg and Garza) has a sufficient connection with the enforcement of Section 276.016(a)(1). DAs are expressly tasked with

---

[2]    Defendant Dick also briefly contests that Plaintiff Morgan has established the causation and redressability requirements of standing. *See* Dick Br. at 13-14. These arguments mistakenly assume that Plaintiff Morgan must establish that Dick has enforced, or is actively intending to enforce, Section 276.016(a)(1). As discussed, that is not required for facial First Amendment challenges.

[3]    Defendant Paxton does not dispute that *Ex Parte Young* permits Plaintiffs to challenge Section 276.016(a)(1) against the DAs.

prosecuting violations of the Election Code—including Section 276.016(a)(1)—in their respective jurisdictions. *See State v. Stephens*, --- S.W.3d ---, 2021 WL 5917198, at *9 (Tex. Crim. App. Dec. 15, 2021) ("Each district attorney shall represent the State in all criminal cases in the district courts of his district . . . ." (quoting Tex. Code Crim. Proc. art. 2.01)). The fact that Defendant Dick has never met Plaintiff Morgan, *see* Dick Br. at 12, is irrelevant to the *Ex Parte Young* question. Because Plaintiffs have established a threat of enforcement of Section 276.016(a)(1) sufficient to satisfy Article III standing, they have also established a sufficient connection between the DAs and the enforcement of the statute for *Ex Parte Young* purposes.

### B. Plaintiff Longoria Has Standing to Challenge Section 31.129 and Sovereign Immunity Does Not Preclude Her From Doing So

For all the same reasons the Court has subject matter jurisdiction over Plaintiffs' challenge to Section 276.016(a)(1), it has jurisdiction over Plaintiff Longoria's challenge to Section 31.129, which simply bootstraps civil penalties to the facial restriction on speech in Section 276.016(a)(1).[4] Plaintiff Longoria is an "election official" and therefore "plainly belong[s] to a class arguably facially restricted by the [law]," which is enough to "establish[] a threat of enforcement" for purposes of Article III standing. *Speech First,* 979 F.3d at 336.

Nevertheless, Defendant Paxton seeks to prevent Plaintiff Longoria from obtaining relief by suggesting that he *might* not have the authority to enforce Section

---

[4]    Section 31.129 provides that "[a]n election official may be liable to this state for a civil penalty if the official: (1) is employed by or is an officer of this state or a political subdivision of this state; and (2) violates a provision of this code."

31.129 against her. *See* AG Br. at 6-7. If Defendant Paxton lacked the authority to enforce Section 31.129, he could simply say so. But Defendant Paxton has insisted that he is unable to "admit or deny" whether he is "authorized" to enforce Section 31.129. *See* Ex. A at 3 (Defendant Paxton's Objections and Responses to Plaintiffs' First Set of Requests for Admission). In the absence of such an admission, Plaintiff Longoria's protected speech will be unconstitutionally chilled.

In any event, Defendant Paxton's recent behavior confirms that he is likely to enforce Section 31.129 against Plaintiff Longoria. He recently filed a civil lawsuit related to mail-in ballot applications against the former Harris County Clerk, invoking the State's "intrinsic right to enact, interpret, and enforce its own laws." *See* Plaintiff's Original Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction at 2, *State v. Hollins*, 607 S.W.3d 923 (Tex. App.—Houston [14th Dist.] 2020, pet. granted) (No. 2020-52383) (quoting *State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015)). Defendant Paxton may well invoke that same authority to enforce Section 31.129 against Plaintiff Longoria.[5]

---

[5]    Such a lawsuit is made more likely by Defendant Paxton's public focus on "election integrity." *Election Integrity*, ATTORNEY GENERAL OF TEXAS, https://www.texasattorneygeneral.gov/initiatives/election-integrity (last visited Feb. 10, 2022); Attorney General Ken Paxton (@KenPaxtonTX), TWITTER (Nov. 5, 2021, 6:25 PM), https://twitter.com/KenPaxtonTX/status/1456749654104756225 ("I will never back down to make sure Texas has safe and secure elections. Election integrity is my number one priority."). It is also made more likely in light of Defendant Paxton's recent public campaign to reverse the Texas Court of Criminal Appeals' ruling in *State v. Stephens* that the Attorney General (*i.e.*, Defendant Paxton) is not authorized to unilaterally prosecute election cases. *See Stephens*, 2021 WL 5917198, at *9; *see also* Patrick Svitek, *Texas Republicans Pressure Court to Reverse Decision Blocking Attorney General from Prosecuting Election Cases*, TEXAS TRIBUNE (Jan. 26, 2022, 1:00 PM),

Defendant Paxton also contends that Plaintiff Longoria cannot establish a threat of enforcement because, even if Defendant Paxton enforced Section 31.129 against Plaintiff Longoria, "the suit would presumably be against Plaintiff Longoria in her official capacity," rather than in her personal capacity. *See* AG Br. at 7 (citing Tex. Elec. Code. § 31.130). While Section 31.130 purportedly limits suits under Section 31.129 in this way, Section 31.129 provides for penalties such as "termination of the person's employment and loss of the person's employment benefits,"[6] that by definition can only be imposed against officials in their personal capacity. Despite any potential tension between Sections 31.129 and 31.130, Plaintiff Longoria is in a class facially restricted by the challenged provisions and subject to consequences that will run to her in her personal capacity.[7] She has therefore established a threat of enforcement.

Because Plaintiff Longoria has established a threat of enforcement by Defendant Paxton of Section 31.129 sufficient to confer Article III standing, she has also established

---

https://www.texastribune.org/2022/01/26/texas-ken-paxton-court-election-prosecution (last visited Feb. 10, 2022) (publicly calling on supporters to call, mail, and email justices at the Texas Court of Criminal Appeals "that voted the wrong way").

[6]    Section 31.129 also provides that election officials "may be liable to this state" for civil penalties. The mention of liability "to the state" suggests a suit against an election official in their personal capacity, not their official capacity.

[7]    No matter how the tension is resolved, the result is the same: Defendant Paxton cannot enforce Section 31.129 against Plaintiff Longoria. If Section 31.129 controls over Section 31.130, then Plaintiff Longoria plainly has standing to challenge the unconstitutional provision, as she is threatened with losing her job and paying a fine. If Section 31.130 controls over Section 31.129, then Defendant Paxton cannot impose those penalties against Plaintiff Longoria.

a sufficient connection between Defendant Paxton and the enforcement of Section 31.129 for purposes of *Ex Parte Young*. *See City of Austin*, 943 F.3d at 1002.

### C. *Pullman* Abstention is Inappropriate

Defendant Paxton contends that, even if the Court has jurisdiction, it should abstain from hearing the case under *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). AG Br. at 11.[8] He fails to demonstrate why the Court should forego the "virtually unflagging obligation" it has to "exercise the jurisdiction given to [it]." *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). *Pullman* abstention is an "extraordinary" exception, *id.* at 813, that excuses the exercise of jurisdiction "only when there is an issue of uncertain state law that is fairly subject to an interpretation [by a state court] which will render unnecessary or substantially modify the federal constitutional question," *Moore v. Hosemann*, 591 F.3d 741, 745 (citing *Baran v. Port of Beaumont Nav. Dist.*, 57 F.3d 436, 442 (5th Cir. 1995)) (alteration in original). "[A]bstention is the exception, not the rule." *La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1491 (5th Cir.1995).

The narrow exception does not apply in this case. The Supreme Court has made clear that district courts should be "particularly reluctant to abstain in cases involving facial challenges based on the First Amendment." *City of Houston v. Hill*, 482 U.S. 451, 467 (1987). To force Plaintiffs "to suffer the delay of state-court proceedings might itself

---

[8]    Defendant Dick suggests the Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971). Dick Br. at 15. *Younger* abstention plainly does not apply here because "there [was] no prosecution pending in state courts at the time the federal proceeding [was] begun.*" See Younger*, 401 U.S. at 41.

effect the impermissible chilling of the very constitutional right [they] seek[] to protect." *Id.* at 467-68.

## II.    Plaintiffs Are Likely to Succeed on the Merits

To win a preliminary injunction, Plaintiffs must prove likely success on the merits—"not certainty." *Whole Woman's Health v. Paxton*, 264 F. Supp. 3d 813, 823 (W.D. Tex. 2017). Plaintiffs easily clear that bar and Defendant Paxton's arguments to the contrary are meritless.

### A.  Section 276.016(a)(1) Violates the First Amendment

As laid out in Plaintiffs' motion, Section 276.016(a)(1) is presumptively unconstitutional because it restricts speech based on its viewpoint and content while serving no state interest at all, much less a compelling one. Motion at 10-19.

Defendant Paxton contends Section 276.016(a)(1) is nevertheless constitutional because it only regulates employee speech. *See* AG Br. at 13. While it is true that the First Amendment does not typically regulate speech "undertaken in the course of performing one's job" as a government employee, *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693–94 (5th Cir. 2007) (per curiam) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)), that limitation does not apply where the government acts as a sovereign as opposed to an employer. Defendant Paxton's response does not address the sovereign exception, positing instead that "any speech" made "pursuant to [one's] official duties . . . . is not protected by the First Amendment." AG Br. at 13 (cleaned up).

Laws that criminalize the speech of public employees are an established exception to the *Garcetti* doctrine. *See*, *e.g.*, *In re Kendall*, 712 F.3d 814, 826-27 (3d Cir. 2013) ("As we have already explained, contempt is not discipline: the Virgin Islands Supreme Court

acted as sovereign, not as public employer, by criminally punishing Kendall's speech."). The rationale for this exception is obvious: employers sometimes fire their employees for their speech as employees. But they never send them to jail. *See Ex parte Perry*, 483 S.W.3d 884, 911 (Tex. Crim. App. 2016) (rejecting the argument that *Garcetti* extends to criminal punishment of public officials after the State conceded that it knew of "no cases applying the government speech theory [from *Garcetti*] to criminal prosecutions" and holding that "[w]hen government seeks criminal punishment, it indeed acts as sovereign and not as employer or speaker"). Section 276.016(a)(1) unquestionably draws on the State's power as a sovereign, not its discretion as an employer, and is thus subject to First Amendment scrutiny. And, as discussed below, the State is not Plaintiffs' employer.

Defendant Paxton alternatively argues that if Section 276.016(a)(1) encompasses protected speech, it passes "any level of scrutiny." AG Br. at 13. As an initial matter, the anti-solicitation provision is a viewpoint-based restriction and therefore *per se* unconstitutional. This ends the inquiry: if a restriction "is viewpoint-based, it is unconstitutional." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019).

Even assuming the law is merely a content-based restriction and therefore subject to strict scrutiny, Defendant Paxton's justifications for the law are neither compelling nor narrowly tailored. First, he contends that voters may become confused when officials solicit mail ballot applications. AG Br. at 13-14. Defendant Paxton's only "evidence" of voter confusion comes from the Declaration of Brian Keith Ingram, Dkt. No. 49-3, but Ingram discusses not *soliciting* mail-in ballot applications but *sending* them, which is addressed in another provision of SB1 not at issue here. *See* Tex. Elec. Code

§ 276.016(a)(2). Moreover, Defendant Paxton's invocation of voter confusion is upside-down. Non-partisan election officials and public officials are in the best position to provide voters with the opportunity to vote by mail—and to know which voters are eligible. Indeed, Plaintiff Longoria's office is responsible for processing the mail-in ballot applications. Silencing these officials while allowing everyone else to continue to solicit mail ballot applications is likely to lead to more confusion. In any event, the First Amendment rejects Defendant Paxton's highly paternalistic theory that the response to potential confusion is to send people to jail for speaking. The proper remedy is "more speech, not enforced silence." *Texas v. Johnson*, 491 U.S. 397, 419 (1989) (quoting *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring)) (internal quotation marks omitted); *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 361 (2010) ("[I]t is our law and our tradition that more speech, not less, is the governing rule.").

Second, he asserts that casting a mail ballot is "less secure" than voting in person. Even if this were true, the anti-solicitation provision does nothing to address that purported issue. Voters can still apply for mail ballots and eligible voters may cast them, while all but a narrow class of individuals may continue to solicit mail-in ballot applications. The anti-solicitation provision has no connection to this rationale.

Finally, Defendant Paxton claims that mail-in ballot applications impose additional burdens on election administration. Again, even if this were true, the anti-solicitation provision does nothing to address that issue. The election administrator of each county is best situated to determine if soliciting mail-in ballot applications will

14

cause an administrative hurdle and adjust her speech accordingly. The State's prohibition on solicitation of mail-in ballot applications does not eliminate any burden. It certainly does not do so in the narrowest fashion, as the legislature instead could have sought ways to streamline the mail voting process without restricting protected speech.[9] *See also Vote America v. Schwab*, --- F. Supp. 3d. ---, 2021 WL 5918918, at *18-22 (D. Kan. Nov. 15, 2021) (rejecting the same three purported justifications under strict scrutiny and granting preliminary injunction).

### B.  Section 31.129 Violates the First Amendment[10]

Section 31.129 violates the First Amendment for the same reasons. When a state imposes fines or other civil punishments, it acts as a sovereign, not an employer. In any event, Plaintiff Longoria is not employed by the State. Rather, she is appointed by, removable by, and accountable to the Harris County Election Commission, in conjunction with the Harris County Commissioners Court. *See* Motion at 16-17.

---

[9]    To the contrary, 276.016(a)(1) operates in conjunction with other provisions in SB1 to amplify any burdens mail balloting puts on election administrators. For example, SB1 also limits early voting hours, Tex. Elec. Code § 85.005, and prohibits a polling place from being in a "moveable structure," Tex. Elec. Code. § 43.031(b).

[10]    Notably, Section 31.129 is triggered only when an election official "violates a provision of [the Election Code]." Tex. Elec. Code Sec. 31.129(b)(2). If Plaintiffs prevail on their First Amendment challenge to Section 276.016(a)(1), the solicitation of mail-in ballot applications will no longer qualify as a violation of the Election Code for purposes of Section 31.129(b)(2).

III.    **A Preliminary Injunction Would Redress Plaintiffs' Irreparable Harm**

   A.  **Plaintiffs Have Established Irreparable Harm**

Defendant Paxton concedes that "[t]he loss of First Amendment freedoms[] for even minimal periods of time" generally constitutes irreparable harm. AG Br. at 16 (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012)). Indeed, it is axiomatic that when constitutional rights are "either threatened or in fact being impaired," a finding of irreparable injury is "mandate[d]." *Deerfield Md. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981); *see also* Motion at 9, 19-20. And the law is clear that, even without an active or imminent prosecution, the operation of the challenged provisions against Plaintiffs' freedom of speech rights causes irreparable harm. *See* Motion at 19-20.

Defendant Paxton instead argues that the timing of Plaintiffs' motion undermines their claim of irreparable harm. But SB1 went into effect on December 2, 2021, and Plaintiffs acted swiftly to protect their rights by filing this suit just eight days later. The purported delays that Defendant Paxton points to were both short and beyond Plaintiffs' control. *See* Plaintiffs' Status Report Concerning their Motion for a Preliminary Injunction, Dkt. No. 23, at 2-3.

Defendant Paxton's argument that a preliminary injunction against Defendants Ogg and Garza "would not accomplish anything" is also misguided. AG Br. at 15-16. The stipulations entered in this case only cover the pendency of this lawsuit; without a preliminary injunction, Plaintiffs could be subject to prosecution after the conclusion of this case for actions taken during the case. A preliminary injunction would relieve such

16

a threat and enable Plaintiffs to immediately resume their protected speech in advance of the coming primary election.

### B. Defendant Paxton's Troubling Theory of Preliminary Injunctions is Baseless

Finally, Defendant Paxton contends that this Court is powerless to provide effective preliminary relief. According to Defendant Paxton, even if this Court granted a preliminary injunction preventing Defendant Paxton and the DAs from enforcing the challenged provisions, "Plaintiffs would still face the possibility of criminal prosecution (or civil enforcement) for solicitation committed during the pendency of the injunction if the injunction were set aside." AG Br. at 17. The theory is as baseless as it is troubling.[11]

The Supreme Court unanimously rejected this theory over a century ago in *Oklahoma Operating Co. v. Love*, 252 U.S. 331 (1920). In that case, the Court, in an opinion by Justice Brandeis, affirmed the award of preliminary injunctive relief against enforcement of a state law. *Id.* at 337. In doing so, the Court squarely held that even if the challenged law should ultimately be upheld, "a permanent injunction should, nevertheless, issue to restrain the enforcement of penalties accrued pendente lite" (that is, during the litigation). *Id.* at 337-38; *see also Bd. of Trade of City of Chicago v. Clyne*, 260 U.S. 704 (1922) (issuing preliminary injunction not only barring enforcement of the law pending appeal but also for actions taken by the plaintiffs in violation of the law while the preliminary injunction was in effect).

---

[11]    It is also such a poor fit for this case that it appears to be copied and pasted from another brief without removing all references to that brief's subject matter. *See* AG Br. at 17 (discussing "heartbeat suits for abortions").

Subjecting someone to civil or criminal liability based on actions or speech made in reliance on a preliminary injunction would raise serious due process concerns. *Cf. Marks v. United States*, 430 U.S. 188, 197 (1977) (overturning a conviction for transporting obscene materials, where the materials were not obscene at the time of transportation but were rendered obscene at the time of trial by an intervening Supreme Court decision). It would also mean that plaintiffs could never obtain preliminary injunctions against the enforcement of laws that unconstitutionally impose criminal or civil liability. And it would make a permanent injunction worth only as much as one's faith that it would be upheld on appeal.

Defendant Paxton ignores the controlling case law foreclosing his theory and the catastrophic consequences the theory would generate. His citation to Justice Stevens' concurring opinion in *Edgar v. MITE Corp.*, 457 U.S. 624 (1982) cannot displace the Court's decades-old controlling precedent. To the extent *MITE* is relevant, the two other members of the Court who reached the issue strongly disagreed with Justice Stevens' approach. *See id.* at 656 (Marshall, J., dissenting) (explaining that federal courts "have the power to issue a preliminary injunction that offers permanent protection from penalties for violations of the statute that occurred during the period the injunction was in effect").

Like the Supreme Court in *Clyne*, the Court could craft a preliminary injunction that would prohibit Defendant Paxton and the DAs not only from enforcing the challenged provisions against Plaintiffs during this litigation but also from enforcing them for speech in violation of the challenged provisions made while a preliminary

injunction is in effect. And, regardless of the wording of a preliminary injunction, the Due Process Clause would independently protect Plaintiffs from any attempt to enforce the challenged provisions for speech made in violation of those provisions in reliance on a preliminary injunction. Accordingly, a preliminary injunction would redress Plaintiffs' irreparable harm.

## IV.    The Balance of Equities and Public Interest Favor Relief

The threatened and ongoing injury to Plaintiffs outweighs any potential harm that an injunction might cause Defendants. Without a preliminary injunction, Plaintiffs will suffer irreparable injury to their constitutional rights. And preventing even "minimal" First Amendment violations is "always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (internal quotation marks omitted).

Defendant Paxton's invocation of the so-called *Purcell* principle is misplaced. The challenged provisions do not implicate *Purcell* because they do not govern election procedures. *Purcell* stands for proposition that "federal courts ordinarily should not alter state election laws in the period close to an election." *DNC v. Wis. State Leg.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). The procedures governing the election itself will be unchanged by this suit. This lawsuit does not seek to change who can apply for a mail-in ballot or how a person could do so. It simply seeks to lift a gag order making it a crime for officials to encourage voters to exercise their right to vote by

mail. Nothing in *Purcell* suggests that censorship is acceptable so long as there is a looming election.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for a preliminary injunction.

**Dated: February 10, 2022**

**Respectfully submitted,**

*/s/ Christian D. Menefee*
Christian D. Menefee
Harris County Attorney
Texas Bar No. 24088049
Christian.Menefee@cao.hctx.net
Jonathan Fombonne
First Assistant Harris County Attorney
Texas Bar No. 24102702
Jonathan.Fombonne@cao.hctx.net
Tiffany Bingham
Managing Counsel
Texas Bar No. 24012287
Tiffany.Bingham@cao.hctx.net
Sameer S. Birring
Assistant County Attorney
Texas Bar No. 24087169
Sameer.Birring@cao.hctx.net
Christina Beeler
Assistant County Attorney
Texas Bar No. 24096124
Christina.Beeler@cao.hctx.net
Susannah Mitcham
Assistant County Attorney
Texas Bar No. 24107219
Susannah.Mitcham@cao.hctx.net
OFFICE OF THE HARRIS COUNTY ATTORNEY
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5101
Facsimile: (713) 755-8924

*/s/ Ethan J. Herenstein*
Sean Morales-Doyle
N.Y. Bar No. 5646641
Ill. Bar No. 6293421 (inactive)
Andrew B. Garber^
N.Y. Bar No. 5684147
Ethan J. Herenstein*
N.Y. Bar No. 5743034
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
Telephone: (646) 292-8310
Facsimile: (212) 463-7308
sean.morales-doyle@nyu.edu
ethan.herenstein@nyu.edu
andrew.garber@nyu.edu

*/s/ Elizabeth Y. Ryan*
Paul R. Genender
Texas State Bar No. 00790758
Elizabeth Y. Ryan
Texas State Bar No. 24067758
Megan Cloud
Texas State Bar No. 24116207
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-8158
Facsimile: (214)746-7777

*Attorneys for Plaintiff:* ISABEL
LONGORIA

\* Admitted *pro hac vice*
^ Application for admission forthcoming

Liz.Ryan@weil.com
Paul.Genender@weil.com
Megan.Cloud@weil.com

-and-

Alexander P. Cohen^
Texas State Bar No. 24109739
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8020
Facsimile: (212) 310-8007
Alexander.Cohen@weil.com

*Attorneys for Plaintiffs:*
ISABEL LONGORIA and
CATHY MORGAN

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on February 10, 2022, the foregoing document was filed electronically with the United States District Court for the Western District of Texas via CM/ECF. As such, this Reply in Support of Motion for Preliminary Injunction was served on all counsel who have consented to electronic service.


 */s/ Ethan J. Herenstein*
Ethan J. Herenstein