**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

|  |  |  |
|---|---|---|
| ISABEL LONGORIA, CATHY MORGAN, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CASE NO. SA:21-CV-1223-XR |
| | § | |
| WARREN K. PAXTON, in his official | § | |
| capacity as Attorney General of Texas; | § | |
| KIM OGG, in her official capacity as Harris | § | |
| County District Attorney; SHAWN DICK, | § | |
| in his official capacity as Williamson | § | |
| County District Attorney; and JOSE | § | |
| GARZA, in his official capacity as Travis | § | |
| County District Attorney, | § | |
| *Defendants.* | § | |

**ORDER**

On this date, the Court considered Plaintiffs' motion for a preliminary injunction (ECF No. 7), Defendant Warren Paxton's response (ECF No. 48), Defendant Shawn Dick's response (ECF No. 47), and Plaintiffs' reply (ECF No. 50). After careful consideration, the Court issues the following order.

**BACKGROUND**

This action arises out of an omnibus voting bill, Senate Bill ("SB1"), the State of Texas enacted on August 31, 2021. SB1 adds two new provisions, among others, to the Texas Election Code ("Election Code"): Sections 276.016(a)(1) ("anti-solicitation provision") and 31.129 ("civil enforcement provision"). Section 276.016(a)(1) provides, "A public official or election official commits an offense if the official, while acting in an official capacity, knowingly: (1) solicits the submission of an application to vote by mail from a person who did not request an application[.]" TEX. ELEC. CODE § 276.016(a)(1). Under Section 31.129, an election official may be liable to the

State of Texas for a civil penalty if (1) the election official is employed by or is an officer of the state or a political subdivision of the state, and (2) violates a provision of the Election Code. *Id.* § 31.129(b)(1)–(2). Section 31.129 makes clear that "[a] civil penalty . . . may include termination of the person's employment and loss of the person's employment benefits." *Id.* § 31.129(c). Together, the anti-solicitation and civil enforcement provisions impose civil and criminal liability—punishable by a mandatory minimum of six months' imprisonment, fines of up to $10,000, and other civil penalties—on "public officials" and "election officials" who "solicit" a vote-by-mail application from an individual who has not requested one, regardless of the individual's eligibility to vote by mail. *See id.* §§ 2746.016(a)(1), 31.129.

Plaintiff Isabel Longoria ("Longoria"), the Elections Administrator for Harris County, and Plaintiff Cathy Morgan ("Morgan"), a volunteer deputy registrar ("VDR") in Williamson and Travis Counties, want to engage in speech that encourages eligible voters to submit timely vote-by-mail applications. ECF No. 5 at 1–2. Plaintiffs fear to engage in such speech, however, because the anti-solicitation and civil enforcement provisions may subject them to criminal prosecution and civil liability. *See id.*; ECF No. 7 at 1–2. Plaintiffs therefore ask the Court to enjoin the defendants in this case from enforcing these provisions. *See* ECF Nos. 5, 7. They argue that, together, these provisions constitute unlawful viewpoint discrimination in violation of the First and Fourteenth Amendments, both facially and as applied to their speech. *Id.*

## I. Appointment of Elections Administrators and VDRs under the Texas Election Code

Texas conducts elections in its 254 counties and more than 1,200 cities pursuant to the Election Code. By default, the Election Code provides that the county tax assessor-collector and county clerk manage voter registration and election administration. *See, e.g.*, Tex. Elec. Code §§ 12.001, 67.007, 83.002. The Election Code alternatively permits counties to appoint a "county

elections administrator" and transfer all voter registration and election administration duties to the appointed individual. *Id.* §§ 31.031, 31.043. These duties include overseeing the conduct of elections, providing information on early voting to individual voters, and distributing official vote-by-mail applications to eligible voters. *See, e.g.*, *id.* §§ 31.043–31.045, 83.002, 85.007.

A majority vote of the county election commission—a body that comprises the county judge, the county clerk, the county tax assessor-collector, and the county chairs of qualifying political parties—appoints a county elections administrator. *Id.* § 31.032. To be eligible for appointment, a candidate must be a qualified Texas voter, *id.* § 31.034, and, as an "election official," cannot have been "finally convicted of an offense" under the Election Code, *see id.* § 1.005(4-a)(C) (including "an elections administrator" in the definition of "election official"); *id.* § 31.128 (describing restrictions on eligibility of election officers). Once appointed, a county elections administrator is an employee of the county in which she serves and may only be removed from office "for good and sufficient cause on the four-fifths vote of the county election commission and approval of that action by a majority vote of the commissioners court." *Id.* § 31.037; *Krier v. Navarro*, 952 S.W.2d 25, 30 (Tex. App.—San Antonio 1997, writ denied) ("[T]he Legislature intended to shield the position of elections administrator from removal except upon compliance with the statutory safeguards established in the Election Code.").

The Election Code also provides for the appointment of volunteer deputy registrars ("VDRs"). VDRs are appointed by the voter registrar—the county tax assessor-collector, the county clerk, or the county elections administrator, as designated by the county—to encourage and facilitate voter registration. *See* TEX. ELEC. CODE §§ 13.031, 13.033, 13.041. An appointment as a VDR is terminated on the expiration of her appointed term or after a final conviction for certain Election Code violations. *Id.* § 13.036. The voting registrar may also terminate the appointment of

a VDR after determining that the VDR (1) failed to adequately review a registration application, (2) intentionally destroyed or physically altered a registration application, or (3) engaged in "any other activity that conflicts with the responsibilities of a volunteer deputy registrar" under the Election Code. *Id.* VDRs are unpaid volunteers; nonetheless, they are subject to the provisions of the Election Code and can face criminal penalties for violations. *See* TEX. ELEC. CODE §§ 13.008, 13.043.

Plaintiff Longoria was sworn in as the Harris County Elections Administrator on November 18, 2020. ECF No. 7-1 ("Longoria Decl.) ¶ 2. Plaintiff Morgan has served as a VDR in Austin, Texas, since 2014, in both Williamson and Travis Counties. ECF No. 7-2 ("Morgan Decl.") ¶¶ 1–2.

## II.    Voting by Mail in Texas

Texas law provides for early voting by mail in certain circumstances. Specifically, any voter who is at least 65 years old, sick or disabled, confined due to childbirth, out of the county on election day, or, in some cases, confined in jail is eligible to vote early by mail. TEX. ELEC. CODE §§ 82.001–82.008. So long as an applicant timely request an application to vote by mail, the county elections administrator or county clerk "shall" provide an application and, if the applicant is deemed eligible, a mail-in ballot. *Id.* §§ 84.001, 84.012, 86.001(b).

Millions of Texans are eligible to vote by mail, and approximately 980,000 did so in the 2020 presidential election.[1] Texas does not maintain a permanent list of voters eligible to vote by mail, and voters must apply to vote by mail at least annually, beginning on the first day of the calendar year and at least eleven days before an election. *Id.* §§ 86.0015 (a), (b-1). To vote by mail

---

[1] United States Election Assistance Commission, Election Administration and Voting Survey 2020 Comprehensive Report at 34 (Aug. 16, 2021), available at https://www.eac.gov/sites/default/files/document_library/files/2020_EAVS_Report_Final_508c.pdf.

in the primary on March 1, 2022, voters must return a vote-by-mail application between January 1 and February 18, 2022. *Id.* § 86.0015(b-1).

### III.     The Challenged Provisions and Impact on Plaintiffs' Speech

Plaintiffs' operative complaint includes two counts. *See* ECF No. 5. In Count I, Longoria and Morgan seek to prevent their local district attorneys from criminally prosecuting them under Section 276.016(a)(1). *See id.* ¶¶ 37–43. In Count II, Longoria seeks to prevent the Attorney General from bringing a civil enforcement action against her under Section 31.129 for violating Section 276.016(a)(1). *See id.* ¶¶ 44–46.

Section 276.016(a) provides that "[a] public official or election official commits an offense if the official, while acting in an official capacity, knowingly, (1) solicits the submission of an application to vote by mail from a person who did not request an application." Tᴇx. Eʟᴇᴄ. Cᴏᴅᴇ § 276.016(a)(1). Section 276.0016(e) sets forth two exceptions to the general prohibition on solicitation. Section 276.016(a)(1) does not apply if the public official or election official (1) "provide[s] general information about voting by mail, the vote by mail process, or the timelines associated with voting to a person or the public" (the "general information" exception) or (2) engages in solicitation "while acting in the official's capacity as a candidate for a public elective office" (the "candidate for office" exception). *Id.* § 276.016(e).

An offense under Section 276.016 is a state jail felony, *id.* § 276.016(b), which is punishable by confinement in a state jail for a term of at least 180 days, not to exceed two years, and a fine of up to $10,000. Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ § 12.35. Section 276.016(f) clarifies that criminal liability is not the only available enforcement mechanism: "The remedy provided under this chapter is cumulative, and does not restrict any other remedies provided by this code or by law."

TEX. ELEC. CODE § 276.016(f). Section 276.016(f) also provides that "a violation of this section is subject to injunctive relief or mandamus as provided by this code." *Id.*

Section 31.129 sets forth the civil penalties for violations of the Election Code, including Section 276.016. Section 31.129 provides:

> (b) An election official may be liable to this state for a civil penalty if the official:
>
>> (1) is employed by or is an officer of this state or a political subdivision of this state; and
>>
>> (2) violates a provision of this code.
>
> (c) A civil penalty imposed under this section may include termination of the person's employment and loss of the person's employment benefits.

*Id.* § 31.129(b)–(c). Further, "[any] action, including an action for a writ of mandamus, alleging that an election officer violated a provision of [the Election Code] while acting in the officer's official capacity may only be brought against the officer in the officer's *official capacity*." *Id.* § 31.130 (emphasis added).

Longoria asserts that, before Texas enacted the anti-solicitation and civil enforcement provisions, she engaged in public outreach and in-person communications to encourage eligible voters to vote by mail. Longoria Decl. ¶¶ 9–10. During outreach events at senior citizen homes and residential facilities, for example, she spoke with numerous voters about their right to vote by mail; talked about the benefits of voting by mail; encouraged voters eligible to vote by mail to do so; and brought mail-in voting applications to make the application process easier. *Id.* Longoria has also delivered speeches at events about increasing voter participation, including through mail-in voting, and has distributed vote-by-mail applications at such events. *Id.* ¶ 10.

This election cycle, Longoria wants to engage in similar voter outreach efforts and wants to work with non-profit and civic organizations, as well as governmental entities, to encourage

eligible voters to vote by mail. *Id.* ¶ 17. However, Longoria asserts that the anti-solicitation and civil enforcement provisions chill her voter-outreach activities and speech by causing her to alter the content of her speech out of concern that the communications could be construed as solicitation prohibited under Section 276.016(a)(1). *Id.* ¶ 18. Specifically, Longoria alleges that she is chilled from using print and electronic communications with information about eligibility to vote by mail, bringing vote-by-mail applications to voter-outreach events, and highlighting the benefits of voting by mail in her communications with voters. *Id.* ¶¶ 19–20.

Morgan, in her role as a VDR, staffs tables at non-partisan voter drives and conducts door-to-door outreach to register and provide voters with information on how to vote. Morgan Decl. ¶ 10. When Morgan encounters a voter she believes may be eligible to vote by mail, she informs the voter of the option to vote by mail. *Id.* ¶ 11. Morgan no longer educates voters about mail-in ballots because she is unsure if doing so will subject her to prosecution under the anti-solicitation provision. *Id.* ¶ 19. Furthermore, because her role as a VDR does not start or stop at defined times, Morgan worries that certain personal interactions could be construed as acting in her official capacity, putting her at risk of prosecution under the anti-solicitation provision. *Id.* ¶ 21.

## IV.    Procedural History

Plaintiffs originally filed suit on December 10, 2021, asserting claims against Texas Attorney General Kenneth Paxton only. ECF No. 1. On December 27, 2021, they filed their first amended complaint, which, among other things, amended their challenge to Section 276.016(a)(1) by adding three county district attorneys—Kim Ogg of Harris County, Shawn Dick of Williamson County, and Jose Garza of Travis County—as defendants in light of the decision recently issued

by the Texas Court of Criminal Appeals in *State v. Stephens*, No. PD-1032-20, 2021 WL 5917198, at *10 (Tex. Crim. App. Dec. 15, 2021) (not released for publication).[2] ECF No. 5.

Plaintiffs filed a motion for preliminary injunction on December 28, 2021, seeking to enjoin Defendants Paxton, Ogg, Dick, and Garza from enforcing Section 276.016(a)(1) and Section 31.129 of the Election Code, as applied to a violation of Section 276.016(a)(1), until final resolution of this case. *See* ECF No. 7. On January 31, 2022, Defendants Ogg and Garza filed stipulations indicating that, in the interest of conserving prosecutorial resources, they would not enforce Section 276.016(a)(1) "until such time as a final, non-appealable decision has been issued in this matter." ECF No. 35 ¶ 2; ECF No. 36 ¶ 3. Defendants Paxton and Dick ("Defendants") filed responses in opposition, and Plaintiffs filed a reply. ECF Nos. 48, 47, 50. The Court held a hearing on February 11, 2022. *See* ECF No. 52.

## DISCUSSION

### I. Subject Matter Jurisdiction

Defendants assert that the Court does not have subject matter jurisdiction over Plaintiffs' claims for two reasons. First, Defendants contend that Plaintiffs have failed to establish Article III standing to challenge the anti-solicitation and civil enforcement provisions. *See* ECF No. 48, at 11–17; ECF No. 47, at 12–14. Second, Defendants argue that Plaintiffs have failed to satisfy the *Ex Parte Young* exception to sovereign immunity under the Eleventh Amendment because Plaintiffs have not established a credible threat of enforcement. *See* ECF No. 48, at 11–17; ECF No. 47, at 11–12. Alternatively, Defendants ask the Court to exercise its discretion to abstain from

---

[2] In *Stephens*, the Texas Court of Criminal Appeals concluded that the Election Code's delegation of prosecutorial authority to the Attorney General under Section 273.021 violated the separation-of-powers clause of the Texas Constitution. 2021 WL 5917198, at *9. Thus, "[t]he Attorney General lacks constitutional authority to independently prosecute [an election] crime in a district or inferior court without the consent of the appropriate local county or district attorney by a deputization order." *Id. Stephens* did not comment on the Attorney General's authority to pursue civil enforcement under the Election Code, and the amended complaint seeks to enjoin him from enforcing Section 276.016(a)(1) against Longoria through the civil penalties available under Section 31.129. ECF No. 5 at 13.

exercising its jurisdiction over this case pursuant to the *Pullman* and *Younger* abstention doctrines. *See* ECF No. 48, at 17–18; ECF No. 47, at 15–16.

### A. Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST., Art. III, § 2. The doctrine of standing gives meaning to these constitutional limits by "identify[ing] those disputes which are appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

To establish Article III standing, a plaintiff must demonstrate that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan*, 504 U.S. at 560–61. The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements. *Id.* at 561. "[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury" for the self-evident reason that "injunctive and declaratory relief 'cannot conceivably remedy any past wrong.'" *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998)).

To constitute an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) "concrete and particularized," not abstract; and (3) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 720–21 (citations omitted). The injury must be "imminent . . . to ensure that the alleged injury is not too speculative for Article III purposes." *Id.* at 721 (quoting *Lujan*, 504 U.S. at 564 n.2). For a threatened future injury to satisfy the imminence requirement, there must be at least a "substantial risk" that the injury will occur.

*Stringer*, 942 F.3d at 721 (quoting *Susan B. Anthony List*, 573 U.S. at 158). Nonetheless, "[t]he injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an identifiable trifle." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (quotations omitted). This is because the injury in fact requirement under Article III is qualitative, not quantitative, in nature." *Id.*. Indeed, in the pre-enforcement context, a plaintiff need only allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 161–64.

These requirements ensure that plaintiffs have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Massachusetts v. EPA*, 549 U.S. 497 (2007) (quoting *Baker v. Carr*, 369 U.S. 186 (1962)) (internal quotation marks removed). However, the manner and degree of evidence required to show standing at earlier stages of litigation is less than at later stages. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329–30 (5th Cir. 2020), *as revised* (Oct. 30, 2020) (citing *Lujan*, 504 U.S. at 561) ("each element [of standing] must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation"). At the preliminary injunction stage, the movant need only clearly show that each element of standing is "likely to obtain in the case at hand." *Id.* Moreover, "in the context of injunctive relief, one plaintiff's successful demonstration of standing 'is sufficient to satisfy Article III's case-or-controversy requirement.'" *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 178 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021) (quoting *Texas v. United States*, 945 F.3d 355, 377–78 (5th Cir. 2019)).

1.  **Injury in fact**

The Fifth Circuit has "repeatedly held, in the pre-enforcement context, that '[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement.'" *Fenves*, 979 F.3d at 330–31 (quoting *Houston Chronicle v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007)). To satisfy standing requirements, this type of self-censorship must arise from a fear of prosecution that is not "imaginary or wholly speculative." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979). A fear of prosecution is "imaginary or wholly speculative" where plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.'" *Id.* (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

The Fifth Circuit recently clarified in *Fenves* that, "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will *assume* a credible threat of prosecution in the absence of compelling contrary evidence." *Fenves*, 979 F.3d at 335 (emphasis added) (quoting *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996)). To establish a credible fear of enforcement, then, a plaintiff may, but need not, rely on a history of past enforcement of similar policies or direct threats to enforce the challenged policies: "Past enforcement of speech-related policies can assure standing," but "a lack of past enforcement does not alone doom a claim of standing." *Fenves*, 979 F.3d at 336 (citing *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006). Rather, a plaintiff may also establish a substantial threat of enforcement simply by showing that she is "either presently or prospectively subject to the regulations, proscriptions, or compulsions [being challenged]." *Id.* at 335 (citing *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).

A plaintiff whose speech is subject to the challenged restriction can establish standing even where the defendant disavows any intention to enforce the policy. *Id.* at 337. As the Fifth Circuit put it:

> [I]f there is no history of inappropriate or unconstitutional past enforcement, and no intention to pursue discipline [up to and including criminal referral] under these policies for speech that is protected by the First Amendment, then why maintain the policies at all? At least, why maintain the plethora of potential sanctions?

*Id.* "Where the policy remains non-moribund, the claim is that the policy causes self-censorship among those who are subject to it, and the [plaintiffs'] speech is arguably regulated by the policy, there is standing." *Id.* at 336–37 (citing *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767–70 (6th Cir. 2019) (fact that "there is no evidence in the record" of past enforcement "misses the point")). In the pre-enforcement context, "the threat is latent in the existence of the statute." *Id.* at 336. If a plaintiff "plainly belong[s] to a class arguably facially restricted by the [law]," that is enough to "establish[] a threat of enforcement." *Id.*

The Fifth Circuit's reasoning in *Fenves* is entirely consistent with Supreme Court standing precedent in the context of First Amendment challenges to statutes imposing criminal penalties. *See, e.g.*, *Babbitt*, 442 U.S. at 302. In *Babbitt*, a farmworker's union challenged a provision in Arizona's farm labor statute that prohibited certain forms of consumer publicity as a restriction of its protected speech. *Id.* The union asserted that it had curtailed its consumer appeals because it feared prosecution under a second provision that imposed criminal penalties on "[a]ny person . . . who violates any provision" of the farm labor statute. *Id.* The Court concluded that the union had standing to challenge the consumer publicity provision even though "the criminal penalty provision ha[d] not yet been applied and [might] never be applied" to a union for engaging in prohibited consumer publicity. *Id.* The Court reasoned that the union was "not without some reason in fearing prosecution" because the criminal penalty provision applied to the union's speech, and

"[m]oreover, the State ha[d] not disavowed any intention of invoking the criminal penalty provision against unions" that violated the consumer publicity provisions *Id.* In taking this practical approach to standing, the Court returned to the purpose of the inquiry:

> [A]s we have noted, when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative[,] **a plaintiff need not first expose himself to actual arrest or prosecution to be entitled to challenge the statute**. . . . In our view, the positions of the parties are sufficiently adverse with respect to the consumer publicity provision proscribing misrepresentations to present a case or controversy within the jurisdiction of the District Court.

*Id.* (emphasis added) (citations and quotations omitted).

### a. Plaintiff Longoria

Longoria easily satisfies the injury-in-fact requirement for the purposes of challenging both Section 276.016(a) and Section 31.129 by alleging that her speech has been and continues to be chilled by the "risk of criminal and civil liability." ECF No. 5 at 1–2.

In her complaint, Longoria asserts that many of her communications as a county elections administrator "go beyond merely providing general information, and instead involve affirmatively encouraging individual voters to request an application to vote by mail, while handing out applications so that the voter can do so." Longoria Decl. ¶ 14. Longoria wants to engage in several forms of voter outreach relating to the mail-in voting process, as she has done in the past. These include community events, conversations with individual voters, and print and electronic communications, in which Longoria would promote mail-in voting, explain its benefits—that it is "as safe and reliable as in-person voting and easier than going to the polls"—and encourage voters to submit applications. *See id.* ¶¶ 16–19. The anti-solicitation and civil enforcement provision have deterred Longoria from following through with her plans, however:

> I am unwilling to risk engaging in communications with voters regarding mail-in voting if it means I could be subject to imprisonment or other penalties, even though I believe those communications are a central part of my duties as an elections administrator . . . . I am now refraining from engaging in those outreach efforts, out of fear that those communications and conversations with voters regarding mail-in voting could subject me to criminal or civil penalties under SB 1. Accordingly, absent relief from this Court, I will not engage in those communications, even though I believe they would be beneficial to the voters of Harris County and would increase participation by eligible voters in the electoral process.

*Id.* ¶¶ 16–17.

At the hearing, Longoria similarly testified that, because of the anti-solicitation and civil enforcement provisions, she believes she cannot "advise, recommend, urge, counsel people to submit a mail-in application ultimately to vote by mail even if it's the only way they can vote[.]" Hearing Tr. 40:23–41:1. She further testified that criminal and civil penalties may arise if she engages in speech that violations the anti-solicitation provision: "If I remember correctly, there's a minimum six-month jail penalty that can be imposed. I could lose my job. I could be levied a fine, pretty hefty fine in the high thousands or so and ultimately be convicted of a […] crime in Texas." *Id.* 41:4–7.

Further, as a county elections administrator, Longoria is an "election official" as defined in the Election Code and is an employee of Harris County. *See* TEX. ELEC. CODE § 1.005(4-a)(C) (including "an elections administrator" in the definition of "election official"). Thus, with respect to both provisions, Longoria clearly falls within the class of persons whose speech is restricted. *See id.* § 276.016(a) (proscribing "solicitation" of mail-in voting applications by "[a] public official or election official"); *id.* § 31.129(b) (imposing civil penalties for violations of the Election Code by an "election official" who is "employed by. . . a political subdivision of this state").

14

Likewise, the speech in which Longoria wants to engage is "arguably regulated" by Section 276.016(a)(1). *Fenves*, 979 F.3d at 336–37. The Attorney General contends that Longoria has not established that she wants to violate Section 276.016(a)(1) because the speech she wants to engage in "does not seem to encompass 'soliciting the submission of an application to vote by mail from a person who did not request such an application.'" ECF No. 48 at 6 (citing Tex. Elec. Code § 276.016(a)(1)). The Court disagrees. Promoting mail-in voting, explaining its benefits, and encouraging voters to submit applications to vote by mail—whether individually, at a community event, or through print or electronic communications—are all "arguably regulated" by the anti-solicitation provision. *Fenves*, 979 F.3d at 336. Nothing more is required. Indeed, the Attorney General's own uncertainty about whether Longoria's proposed speech would violate the anti-solicitation provision indicates that Plaintiffs' fear of enforcement is *not* "imaginary or wholly speculative." *Babbitt*, 442 U.S. at 302; *see also* ECF No. 48, at 12 ("On its face, that description does not *seem* to encompass 'solicit[ing] the submission of an application to vote by mail from a person who did not request an application.'") (emphasis added); Hearing Tr. 111:18–20 ("Judge, if what the hypothetical is if Miss Longoria violated 276.016(a)(1), could she be prosecuted, the answer is I don't know.").

The Attorney General also argues that Longoria cannot establish standing in light of Defendant Ogg's agreement not to enforce Section 276.016(a)(1) while this case is pending. ECF No. 48 at 6 (citing ECF No. 35 ¶ 2). Even if this stipulation obviated the need for a preliminarily injunction—though, as discussed herein, it does not—the agreement does not vitiate Longoria's standing to challenge the anti-solicitation and civil enforcement provisions. In arguing that it does, the Attorney General has conflated the jurisdictional question with the merits question. Ogg's temporary agreement not to enforce Section 276.016(a)(1) is just that—temporary. Ogg has not

affirmatively represented that she *never* intends to enforce the anti-solicitation provision (regardless of their constitutionality) or that she intends to comply with any future court order enjoining such enforcement. *See* ECF No. 35. In the "absence of compelling contrary evidence," the Court will "assume a credible threat of prosecution" where, as here, the challenged statute facially restricts expressive activity by the class to which the plaintiff belongs. *Fenves*, 979 F.3d at 335. Put differently, should the Court determine that Section 276.016(a)(1) is unconstitutional, the appropriate relief for Longoria would be to issue an order permanently enjoining Ogg from enforcing the provision against Longoria. Thus, to conclude that Longoria lacks standing to challenge Section 276.016(a)(1) based on Ogg's representation that she will not enforce the law *for now*, would improperly and permanently deprive Longoria of much-needed relief *later*. Moreover, Ogg has not agreed to stay enforcement of the provision through a *civil* action.[3]

With respect to his own office, the Attorney General argues that Longoria has not established a credible threat of enforcement or offered any evidence "regarding the Attorney General's authority or inclination to enforce Section 276.016(a)(1) through Section 31.129." ECF No. 48 at 6. For the reasons set forth below in the analysis of the Attorney General's sovereign immunity as an officer of the State of Texas, the Court disagrees. For standing purposes, however, it is sufficient to point out that Longoria's speech is regulated by the anti-solicitation and civil enforcement provisions, and that the Attorney General has not introduced compelling evidence that it does not intend to enforce Section 276.016(a)(1). *Fenves*, 979 F.3d at 335.

Finally, the Attorney General asserts that, even if Longoria could show that she faced a substantial threat of civil enforcement, Longoria would not have standing to challenge the anti-solicitation provision in her personal capacity. ECF No. 48 at 13. This position is based on Section

---

[3] Counsel for the Attorney General made clear at the hearing that there is no "official position" on who has the authority to bring an action under the civil enforcement provision. Hearing Tr. 129:8–9.

31.130 of the Election Code, which provides that "[any] action, including an action for a writ of mandamus, alleging that an election officer violated a provision of [the Election Code] while acting in the officer's official capacity may only be brought against the officer in the officer's *official capacity*." *Id.* § 31.130 (emphasis added). Thus, the Attorney General notes, any "monetary penalties" under the Election Code would be imposed on the entity she represents—Harris County—rather than Longoria in her personal capacity. ECF No. 48 at 13.

Setting aside the question of whether the State has authority to impose such sanctions on a political subdivision in the first place, the Attorney General disregards the fact that, to the extent monetary penalties are available under Section 31.129, those are not the only possible penalties. Indeed, with respect to two of the civil penalties enumerated under Section 31.129(c)—termination of employment and loss of benefits—the notion that an enforcement action could not establish an injury to Longoria in her personal capacity is nonsensical. *See Elrod v. Burns*, 427 U.S. 347, 96 (1976) (stating that the government may not condition public employment upon compliance with unconstitutional conditions). Any subsequent challenge to her termination, for example, would need to be brought in her personal capacity because, after being terminated, she would no longer exist in an "official capacity."

In sum, Longoria has clearly shown that the injury-in-fact requirement is "likely to obtain in the case at hand," with respect to her claims against both the Attorney General and Defendant Ogg. *Fenves*, 979 F.3d at 329–30.

### b.  Plaintiff Morgan

Plaintiff Morgan alleges that she has been chilled from encouraging voters to request a mail-in ballot because of her fear of criminal prosecution under Section 276.016(a)(1) for her activities as a VDR. ECF No. 5. The Court is satisfied that Morgan's speech has been chilled and

that her proposed speech—"encouraging voters to request a mail-in ballot"—arguably falls within the scope of the speech that Section 276.016(a)(1) prohibits. Moreover, despite Defendant Dick's arguments to the contrary, *see* ECF No. 47 at 5–9, Morgan need not prove that someone has specifically threatened to criminally prosecute her for violating the anti-solicitation provision to establish that her fear is "not imaginary or wholly speculative." *Babbitt*, 442 U.S. at 302. Neither Defendant Dick's failure to initiate proceedings at the moment nor Defendant Garza's stipulation to stay enforcement temporarily represents "compelling contrary evidence" that the anti-solicitation provision will not be enforced against her. *Fenves*, 979 F.3d at 335.

Nonetheless, it is not immediately clear that Morgan belongs to the class of persons whose speech is regulated under Section 276.016(a)—public officials and election officials. Section 1.005(4-a) of the Election Code defines "election official" with a list of qualifying positions that does not include Morgan's title—volunteer deputy registrar. Tex. Elec. Code § 1.005(4-a). The Election Code itself does not define "public official." However, the term is defined elsewhere in SB1 to mean "any person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of this state, a government agency, a political subdivision, or any other public body established by state law." SB1 § 8.05, 2021 87th Leg. 2d Spec. Sess. (Tex. 2021) (codified at Tex. Gov't Code § 22.304). Because VDRs are appointed to their position by a county official and "assume a role carefully regulated by the state to serve the citizens who register to vote as well as the public interest in the integrity of the electoral body," *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 393 (5th Cir. 2013), they likely qualify as public officials under Section 276.016(a)(1).

Because the challenged provision facially restricts Morgan's expressive activity, and without compelling evidence that criminal prosecution is unlikely, the Court assumes a substantial

threat of enforcement. *Fenves*, 979 F.3d at 335. Thus, Morgan has established that the injury-in-fact requirement is "likely to obtain in the case at hand," as to her claims against Defendants Garza and Dick. *Fenves*, 979 F.3d at 329–30.

### 2. Causation and redressability

Given the foregoing analysis, the causation and redressability prongs of the standing inquiry are easily satisfied here. Potential criminal and civil enforcement of the anti-solicitation provision has chilled and continues to chill Plaintiffs' speech, and the chilling effect could be redressed by an order enjoining enforcement of those provisions. *See Carmouche*, 449 F.3d at 661 ("The causation and redressability prongs of the standing inquiry are easily satisfied here. Potential enforcement of the statute caused the [plaintiff]'s self-censorship, and the injury could be redressed by enjoining enforcement of the [statute]. The [plaintiff] therefore has standing to mount its facial challenge.").

Accordingly, the Court finds that Plaintiffs have made a clear showing that *Lujan*'s requirements for standing are met at this stage in the litigation. Plaintiffs have plausibly alleged an injury in fact (a chilling of their protected speech based on their credible fear of enforcement), which is fairly traceable to the Defendants, and a favorable order from this Court (enjoining the enforcement of the anti-solicitation provision) would redress the future threatened injuries to Plaintiffs' protected speech. In short, the positions of the parties are "sufficiently adverse" with respect to the anti-solicitation provision to present a case or controversy within this Court's jurisdiction. *Babbitt*, 442 U.S. at 302.

### B. Sovereign Immunity

Generally, state sovereign immunity under the Eleventh Amendment precludes suits against state officials in their official capacities. *See City of Austin v. Paxton*, 943 F.3d 993, 997

(5th Cir. 2019). The *Ex parte Young* exception to state sovereign immunity allows private parties to bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). The Supreme Court has counseled that, "[i]n determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). For the exception to apply, the state official, "by virtue of his office," must have "some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Young*, 209 U.S. at 157. The text of the challenged law need not actually state the official's duty to enforce it, although such a statement may make that duty clearer. *Id.*

Despite the "straightforward inquiry" envisioned by the Supreme Court, the Fifth Circuit has acknowledged the tortured nature of its *Ex parte Young* precedent. *See, e.g.*, *Tex. Democratic Party*, 961 F.3d at 400 n.21 ("Our decisions are not a model of clarity on what 'constitutes a sufficient connection to enforcement.'") (quoting *City of Austin*, 943 F.3d at 999). While "[t]he precise scope of the 'some connection' requirement is still unsettled," the Fifth Circuit has stated that "it is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Id.* at 400–01 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)).

First, a plaintiff can put forth some evidence showing that the defendant has some authority to compel compliance with the law or constrain a person's ability to violate the law. *See Tex.*

*Democratic Party*, 961 F.3d at 401. Alternatively, a plaintiff could provide some evidence showing that the defendant has a duty to enforce the statute in question and a "demonstrated willingness" to enforce the statutes. *Id.* (quotation omitted). Finally, a plaintiff can demonstrate a sufficient connection by putting forth evidence showing "some scintilla" of affirmative action by the state official. *Id.* (quotation omitted). In other words, if an "official *can* act, and there's a significant possibility that he or she *will*, the official has engaged in enough compulsion or restraint to apply the *Young* exception." *Id.* (alteration marks omitted).

Here, both Plaintiffs have alleged an ongoing violation of their right to free speech under the First Amendment, as incorporated by the Fourteenth Amendment, and seek relief that is properly characterized as prospective—a declaratory judgment and an injunction. ECF No. 5, at Thus, to demonstrate that the exception to sovereign immunity here, Plaintiffs need only establish that Defendants, "by virtue of their office," have "some connection" with the enforcement of the challenged law

### 1.  Local district attorneys have a sufficient connection to enforcement

With respect to criminal enforcement of the anti-solicitation provision, the Election Code originally authorized the Attorney General to prosecute offenses prescribed under the election laws of the State. TEX. ELEC. CODE § 273.021. The Court of Criminal Appeals ruled in *Stephens* that this delegation of authority violated the separation-of-powers clause of the Texas Constitution, and that only local district attorneys have independent authority to prosecute election crimes. Even before *Stephens*, however, the Election Code explicitly contemplated that county and district attorneys would play an enforcement role. For example, Section 273.022 provides that the attorney general "may direct the county or district attorney . . . to prosecute an offense that the attorney

general is authorized to prosecute under Section 273.021 or to assist the attorney general in the prosecution." TEX. ELEC. CODE § 273.021.

Plaintiffs have alleged that the district attorneys are responsible for investigating and prosecuting violations of the Election Code. ECF No. 5 at 4. Together, the language of the Election Code and *Stephens* confirm that county and district attorneys have authority to compel or constrain a person's ability to violate the law. *See Tex. Democratic Party*, 961 F.3d at 401. This is sufficient to establish that county and district attorneys, by virtue of their office, have "some connection" with enforcement of the Election Code beyond a "general duty to see that the laws of the state are implemented." *Morris v. Livingston*, 739 F.3d at 746; *see also Nat'l Press Photographers Ass'n v. McCraw*, 504 F. Supp. 3d 568, 583 (W.D. Tex. 2020) ("Because [p]laintiffs have pled that [the district attorney] is responsible for representing the state in criminal matters, including prosecuting violations of the [challenged] provisions, plaintiffs have met their burden of demonstrating a scintilla of enforcement to fall within the *Ex parte Young* exception."). Accordingly, the Court concludes that Plaintiffs have met their burden of demonstrating that their claims against Defendants Ogg, Garza, and Dick fall within the *Ex parte Young* exception to sovereign immunity.

**2. The Attorney General has a sufficient connection to enforcement**

With respect to the Attorney General, the Court observes that the delegation of prosecutorial authority in Section 273.021 can no longer satisfy *Ex parte Young*'s "sufficient connection" requirement in light of *Stephens*. Even absent the delegation of authority to independently prosecute election crimes, however, the surviving provisions of the Election Code still envision, and likely *require*, the Attorney General's participation in enforcement activities. For example, Section 273.001 provides:

> (a)   If two or more registered voters in an election covering multiple counties present affidavits alleging criminal conduct in connection

with the election to the attorney general, **the attorney general *shall* investigate the allegations**.

(b)     **[T]he attorney general *may* conduct an investigation on the officer's own initiative** to determine if criminal conduct occurred in connection with an election.

(c)     On receipt of an affidavit [from a registrar], the county or district attorney having jurisdiction and, if applicable, **the attorney general *shall* investigate the matter**.

(d)     On referral of a complaint from the secretary of state under Section 31.006, **the attorney general *may* investigate the allegations**.

TEX. ELEC. CODE § 273.021.

Even before the Court of Criminal Appeals issued its decision in *Stephens*—when the Attorney General was still operating under the mantle of authority to pursue criminal prosecutions for violations of election laws—the Attorney General demonstrated a clear willingness to employ civil enforcement mechanisms available under the Election Code to challenge election officials' speech concerning applications to vote by mail. In 2020, for example, the State of Texas, through the Attorney General, brought a mandamus action alleging that election officials were encouraging voters to apply to vote by mail by claiming that fear of contracting COVID at a polling place constituted a "disability" under the Election Code. *In re State*, 602 S.W.3d 549 (Tex. 2020). Nonetheless, the Attorney General suggests that the Court may not consider these statutory provisions or his history of enforcing provisions of the Election Code governing official's speech as to applications to vote by mail based on the Fifth Circuit's reasoning in *City of Austin v. Paxton*.

In *City of Austin*, the Fifth Circuit considered whether the *Ex parte Young* exception was established as to the Attorney General. 943 F.3d at 998. There, the City had passed a municipal ordinance prohibiting landlords from discriminating against tenants paying their rent with federal housing vouchers. *Id.* at 996. Texas subsequently passed a state law barring municipalities or

counties from adopting such ordinances. *Id.* The state statute empowered the Attorney General to enforce the law by intervening in any enforcement suit the City might bring against a landlord for violating the municipal ordinance. *Id.* at 1000 n.1. The City sued the Attorney General, alleging that federal housing law preempted the state legislation. *Id.* at 997. It argued that the *Ex parte Young* exception to sovereign immunity applied because the Attorney General had the authority to enforce the state law and had a "habit" of intervening in lawsuits involving municipal ordinances to "enforce the supremacy of state law." *Id.* at 1001. This, the Fifth Circuit held, was not sufficient to demonstrate "some scintilla of 'enforcement,'" as the Attorney General's authority to enforce the statute alone did not constrain the City's ability to enforce its ordinance. *Id.* at 1001–02. Simply because the Attorney General had "chosen to intervene to defend *different* statutes under *different* circumstances does not show that he is likely to do the same here." *Id.* at 1002 (emphasis in original). Further, the Fifth Circuit noted, "the City face[d] no consequences" if it enforced its ordinance. *Id.*

This case differs from *City of Austin* in many respects. Most notably, under the civil enforcement provision, Plaintiff Longoria would face significant consequences if the Attorney General were to civilly prosecute her: She would risk losing her employment and employment benefits. Furthermore, under SB1, the Attorney General has broad investigatory powers, and though SB1 does not specify whether the Attorney General may enforce Section 31.129, he has filed civil lawsuits against election officials, invoking the State's "intrinsic right to enact, interpret, and enforce its own laws." Appellant's Emergency Motion for Relief Under Rule 29.3, *State v. Hollins*, 607 S.W.3d 923 (Tex. App.—Houston [14th Dist.] 2020, pet. granted) (No. 14-20-00627-CV), 2020 WL 5509152, at *9 (quoting *State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015)). Far from different statutes under different circumstances, the Attorney General has demonstrated a

willingness to enforce civil provisions of the Election Code regulating applications to vote by mail against election officials. This is sufficient to demonstrate "some scintilla of 'enforcement.'" *Cf. City of Austin*, 943 F.3d at 1002.

Defendants further argue that mandamus relief under the anti-solicitation provision does not injure Plaintiffs. However, Defendants again misconstrue Plaintiffs' alleged injury—the chilling effect the anti-solicitation provision has on Plaintiffs' speech. Whether a mandamus action would result in some fine or penalty to Plaintiffs, it nonetheless chills Plaintiffs' speech.

## C. *Pullman* Abstention

The Attorney General contends that the Court should exercise its discretion to abstain from ruling on the merits of Plaintiffs' claims "until Texas courts have authoritatively interpreted SB1," pursuant to doctrine set forth in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). ECF No. 48, at 11–12. The Supreme Court's decision in *Pullman* established that "a federal court may, and ordinarily should, refrain from deciding a case in which state action is challenged in federal court as contrary to the federal constitution if there are unsettled questions of state law that may be dispositive of the case and avoid the need for deciding the constitutional question." *United Home Rentals, Inc. v. Tex. Real Estate Com.*, 716 F.2d 324, 331 (5th Cir. 1983) (citation omitted).

There are two prerequisites for abstention under *Pullman*: (1) the case must present an unsettled question of state law, and (2) the question of state law must be dispositive of the case or would materially alter the constitutional question presented. *Harman v. Forssenius*, 380 U.S. 528, 534 (1965). The purpose of *Pullman* abstention is to "avoid unnecessary friction in federal-state functions, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." *Id.* Still, *Pullman* abstention is not "an automatic rule

applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers" that must be considered on "a case-by-case basis." *Baggett v. Bullitt*, 377 U.S. 360, 376 (1964).

In assessing whether to exercise its discretion, the Court must "take into consideration the nature of the controversy and the particular right sought to be enforced." *Edwards v. Sammons,* 437 F.2d 1240, 1243 (5th Cir. 1971). In *Harman*, the Supreme Court upheld the district court's decision not to abstain from ruling on the constitutionality of a voting law pending the resolution of state law questions in the state courts given "the nature of the constitutional deprivation alleged and the probable consequences of abstaining." 380 U.S. at 537. The Supreme Court similarly declined to exercise its discretion to abstain in *Baggett*, where abstention would "delay[ ] ultimate adjudication on the merits" in such a way as to "inhibit the exercise of First Amendment freedoms." 377 U.S. at 379–80.

Here, the alleged violations and irreparable harm that may result from a delay in resolution militate against exercising the Court's discretion to abstain under the *Pullman* doctrine. Although Defendants point to several unsettled questions of state law that would purportedly moot or alter the presentation of the federal questions raised in this action, *see* ECF No. 48, at 11–12, they fail to identify any pending state court action that might resolve these questions. Defendants apparently believe that federalism demands that federal courts wait indefinitely for the piecemeal adjudication of state law questions by state courts, regardless of the consequences to the parties in the federal case of such a delay. They are mistaken.

Where constitutionally protected rights of free speech are concerned, the Supreme Court has recognized that "[forcing a plaintiff] who has commenced a federal action to suffer the delay

of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Zwickler v. Koota*, 389 U.S. 241, 252 (1967).

The need for adjudication of Plaintiffs' claims is immediate. The February 18th deadline by which voters must request applications to vote by mail in the March 2022 primary is only days away, and any injunctive relief awarded after that date will come too late and irreparably violate Plaintiffs' constitutional rights. The Court concludes that *Pullman* abstention is inappropriate in this case.

### D. *Younger* Abstention

Williamson County District Attorney Shawn Dick contends that the Court should abstain from ruling on this matter pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). ECF Nos. 31, 47. "In general, the *Younger* doctrine requires that federal courts decline to exercise jurisdiction over lawsuits when three conditions are met: (1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "State judicial proceedings" generally include criminal, civil, and "administrative proceedings that are judicial in nature." *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 520 (5th Cir. 2004).

Defendant Dick fails to identify a single ongoing state judicial proceeding—in his county or any other—that implicates the anti-solicitation provision. As the first condition is not met, *Younger* does not apply. Dick's assertion that *Younger* requires the Court to refrain from enjoining any matters involving prosecutorial decisions concerning "state laws by state officials" is divorced from both the substantive requirements that govern the *Younger* doctrine and the principles of

federalism that inform it. ECF No. 47 at 16. Indeed, "[r]equiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head." *Steffel v. Thompson*, 415 U.S. 452, 472 (1974).

## II.   Preliminary Injunction Standard

A preliminary injunction will only be granted if the movant demonstrates: "(1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) their substantial injury outweighs the threatened harm to the party to be enjoined; and (4) granting the preliminary injunction will not disserve the public interest." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013). The "extraordinary remedy" of a preliminary injunction should not be granted "unless the party seeking it has 'clearly carried the burden of persuasion on all four requirements,'" *id.*, and "unequivocally show[n] the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997).

### A.   Likelihood of Success on the Merits

The Court's findings of fact, together with its analysis of the parties' submissions, lead it to conclude that Plaintiffs are substantially likely to succeed on the merits of their claims. It is substantially likely that the anti-solicitation provision violates the First Amendment, as incorporated by the Fourteenth Amendment, as unconstitutional viewpoint discrimination.

#### 1.   Plaintiffs' speech is protected by the First Amendment

The Attorney General contends that because anti-solicitation provision applies only to government officials working in their official capacity, Plaintiffs' speech is not protected by the First Amendment. ECF No. 48 at 13. Specifically, the State argues that *Garcetti* and its progeny

permit the State to regulate public employees' speech in the course of performing their official duties. *Id.*

It is true that a government employee's official communications may be regulated by her employer, and the First Amendment does not protect expressions made pursuant to the employee's official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 420–23 (2006); Pickering v. Bd. of Education, 391 U.S. 563 (1968). However, the heightened interest in controlling a government employee's official speech belongs to the government in its capacity as her *employer*. *Garcetti*, 547 U.S. at 418 ("A government entity has broader discretion to restrict speech when it acts in its role as *employer*[.]") (emphasis added). Both of the cases the Attorney General cites for the proposition that Plaintiff's official speech is unprotected involve aggrieved employees challenging disciplinary actions by the governmental entities that employed them. *See id.* at 413; *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 690 (5th Cir. 2007). Longoria and Morgan are not employed by the State; Longoria is employed by Harris County, and Morgan is a volunteer for Travis and Williamson counties. *See* TEX. ELEC. CODE § 31.037; *Dillard*, 883 S.W.2d at 167; *see also* Morgan Dep. 90:15–22; Longoria Dep. 10:20–11:3. Thus, the State's assertion that it is entitled to regulate Longoria and Morgan's official communications as their employer is wholly unavailing.[4]

Moreover, in imposing criminal penalties for violations of the anti-solicitation provision, the State was—far from acting in its capacity as an employer—acting as a sovereign. *See In re*

---

[4] In his motion to dismiss the operative complaint, the Attorney General suggests that Plaintiffs' status as local government employees, rather than state employees is immaterial because "[s]tates routinely require local officials to effectuate state policies by implementing state statutes, including with regard to elections." ECF No. 24 at 17 (citing *Tex. Democratic Party v. Hughes*, 997 F.3d 353, 363). While Defendants dismiss the distinction between employees of the state and employees of local government, Texas law does not. Indeed, Section 31.037 of the Election Code specifically limits the procedures by which an elections administrator can be removed from office and does not provide for removal of a state government official. TEX. ELEC. CODE § 31.037 ("The employment of the county elections administrator may be suspended, with or without pay, or terminated at any time for good and sufficient cause on the four-fifths vote of the county election commission and approval of that action by a majority vote of the commissioners court."). To the extent that Section 31.129 permits the State to terminate Plaintiffs' employment or benefits, it does so pursuant to a statute that it enacted as a sovereign, not as her employer.

*Kendall*, 712 F.3d 814, 826–27 (3d Cir. 2013) ("[T]he Virgin Islands Supreme Court acted as sovereign, not as public employer, by criminally punishing Kendall's speech."); *Ex parte Perry*, 483 S.W.3d 884, 911–12 (Tex. Crim. App. 2016) ("When government seeks criminal punishment, it indeed acts as sovereign and not as employer or speaker."); *see also Healy v. James*, 408 U.S. 169, 202 (1972) (Rehnquist, J., concurring) ("[T]he government in its capacity as employer . . . differs constitutionally from the government in its capacity as the sovereign executing criminal laws."). The full force of the First Amendment applies against a government acting in its sovereign capacity. Because Plaintiffs' speech does not fall within the scope of the "public employee" exception, it is protected to the same degree as that of a private citizen.

Not only is Plaintiffs' proposed speech—encouraging voters to submit applications to vote by mail—armored with the protections that the First Amendment affords to private speech, the Fifth Circuit has recognized that "[s]*oliciting*, urging and persuading the citizen to vote" represent "core protected speech." *Steen*, 732 F.3d 382, 390 (emphasis added); *see also id.* at 392 (disaggregating the activities involved in a voter registration drive based on their expressive character: "one must concede that supporting voter registration is the [VDR]'s speech, while actually completing the forms is the voter's speech, and collecting and delivering the forms are merely conduct.").

## 2. Section 276.016(a)(1) constitutes impermissible viewpoint discrimination

The Attorney General's entire defense rests on his mistaken understanding of the anti-solicitation provision as a restriction on government speech. Given the Court's conclusion that Plaintiffs' speech is entitled to the protections of the First Amendment, however, the next step is to determine the standard by which the Court should assess the constitutionality of the anti-solicitation provision.

The First Amendment, as applied to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. CONST., amend. 1 The State of Texas "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 156. A law is content based if, on its face, it "defin[es] regulated speech by particular subject matter," or "by its function or purpose." *Id.* Laws restricting speech that are content based "are presumptively unconstitutional" and subject to strict scrutiny—that is, they "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* Viewpoint-based restrictions are subject to an even more demanding standard, as they face a virtually *per se* rule of invalidity. *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019); *Rosenberger*, 515 U.S. at 829 ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.").

The anti-solicitation provision is both content- and viewpoint-based restrictions on Plaintiffs' speech. Section 276.016(a)(1) restricts and criminalizes the solicitation of the submission of an application to vote by mail from a person who did not request an application— even if that person is statutorily eligible to vote by mail. Specifically, it provides that a "public official or election official commits an offense" when she "knowingly . . . solicits the submission of an application to vote by mail from a person who did not request an application." TEX. ELEC. CODE § 276.016(a)(1). Section 276.0016(e) sets forth two exceptions to the general prohibition on solicitation. Section 276.016(a)(1) does not apply if the public official or election official (1) "provide[s] general information about voting by mail, the vote by mail process, or the timelines

associated with voting to a person or the public" or (2) engages in solicitation "while acting in the official's capacity as a candidate for a public elective office." *Id.* § 276.016(e).

The term "solicit," as it is used in Section 276.016(a)(1), plainly includes speech. *See, e.g.*, TEX. PENAL CODE § 15.03(a) (defining the offense of criminal solicitation as "request[ing], command[ing], or attempt[ing] to induce another" to commit a felony); *see also Ex Parte Victorick*, 453 S.W.3d 5, 15 (Tex. App.—Beaumont 2014, pet. ref'd) (citing WEBSTER'S THIRD NEW INT'L DICTIONARY 2169 (2002)) ("'Solicit' is not defined in section 33.021 of the Texas Penal Code, and could be understood by the jury by its commonly defined terms, which include, 'to approach with a request or plea' and 'to endeavor to obtain by asking or pleading[.]'"); *Coutlakis v. State*, 268 S.W.2d 192, 258 (Tex. Crim. App. 1954) ("The word 'solicit' is one of common usage and its meaning is simple and not subject to any peculiar usage. As here used, it means 'to entice, to request, to incite' . . . ."); *see also Steen*, 732 F.3d 382, 390 ("*Soliciting*, urging and persuading the citizen to vote" represents "core protected speech."). Section 276.016(a)(1) accordingly prohibits encouraging others to request an application to vote by mail. Typically accomplished through speech.

Section 276.016(a)(1) is accordingly a content-based restriction on speech because its prohibition depends on the content of a person's speech: If a person's speech encourages another person to request an application to vote by mail, then criminal and civil penalties attach. *See Reed*, 576 U.S. at 163. If the speech is about a different topic, they do not. *See id.* Here, the speech Plaintiffs wish to engage in falls within this definition and neither exception applies. Although Plaintiffs want to share general information about applying to vote by mail, they also, more importantly, want to encourage eligible voters to use that information to request a timely application to vote by mail.

Not only does Section 276.016(a)(1) regulate speech on the basis of its content, it is also a viewpoint-based rule. The Attorney General admits as much, asserting that Texas has a "compelling interest in ensuring that official government resources are not used to shift voters from in-person voting to mail-in voting." ECF No. 48 at 13. As it stands, speech encouraging or requesting the submission of an application to vote by mail is a crime. Discouraging the submission of an application to vote by mail, on the other hand, is not. The Attorney General offers several "compelling interests" that is purportedly served by the anti-solicitation provision. He contends that voters may become confused when officials solicit mail ballot applications. ECF No. 48 at 13–14. He further asserts that casting a mail ballot is "less secure" than voting in person and that mail-in ballots impose burdens on election administrability. The Court need not examine whether the anti-solicitation provision is narrowly tailored to these interests, however.

Because the anti-solicitation provision is a viewpoint-based restriction on speech, it is therefore *per se* unconstitutional, and the Government's interests cannot save it. *Iancu*, 139 S. Ct. at 2301 ("Of course, all these decisions are understandable. The rejected marks express opinions that are, at the least, offensive to many Americans. But . . . a law disfavoring 'ideas that offend' discriminates based on viewpoint, in violation of the First Amendment."). Section 276.016(a)(1) emanates from the content of the official's speech and their views on voting by mail, it is a presumptively unconstitutional viewpoint- and content-based restriction on speech. *See Reed*, 576 U.S. at 163; *Rosenberger*, 515 U.S. at 828. Section 31.129 of the Election Code, as applied to violations of Section 267.016(a)(1), is unconstitutional for the same reasons.

## B.    Irreparable Harm

The Attorney General argues that Plaintiffs cannot establish that they will suffer irreparable harm absent a preliminary injunction because they have "introduced no evidence of any imminent

enforcement plans from any Defendant." ECF No. 48 at 15. To be clear, the irreparable harm alleged in this case is not *actual* enforcement of the anti-solicitation provision; the harm is the chilling effect on Plaintiffs' speech that arises from the credible *threat* of enforcement. *See also Babbitt*, 442 U.S. at 302 ("a plaintiff need not first expose himself to actual arrest or prosecution" to establish a cognizable harm).

The Supreme Court has long recognized that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Attorney General concedes as much in his response briefing.[5] ECF No. 48 at 16. Still, Defendants assert that the alleged irreparable harm, "the chilling effect that arises from the threat of imprisonment and civil penalties," cannot be remedied by a preliminary injunction. *See* ECF No. 48 at 17–20. This is because, they assert, "Plaintiffs would still face the possibility of criminal prosecution (or civil enforcement) for solicitation committed during the pendency of the injunction if the injunction were set aside." *Id.* at 17.

Notably, Defendants cite no controlling authority in support of this proposition. There is, though, substantial authority supporting the opposite—that enforcement of activity undertaken during the pendency of a preliminary injunction will not result. For example, in *Oklahoma Operating Co. v. Love*, 252 U.S. 331 (1920), the Supreme Court upheld the trial court's issuance of a preliminary injunction against the enforcement of a state law. In doing so, the Court stated

---

[5] The Attorney General contends that Plaintiffs cannot establish irreparable harm because they did not file a motion for a preliminary injunction until January 3, 2022, "over four months" after learning about SB1 "in the summer of 2021, probably August." ECF No. 48 at 16. Regardless of when Plaintiffs first heard about the prospect of SB1, the original complaint was filed on December 10, 2021—approximately one week after SB1's effective date, and several weeks before voters could begin submitting applications to vote by mail. Five days later, the Court of Criminal Appeals issued its decision in *Stephens*, concluding that the Attorney General did not have the authority to independently prosecute criminal offenses under the Election Code—thus requiring Longoria to file an amended complaint. 2021 WL 5917198, at *10. The amended complaint was filed on December 27, 2021, and the motion for preliminary injunction was filed the next day. *See* ECF Nos. 5, 7. In examining this timeline, the Court cannot locate any evidence that these short "delays" were the result of "dilatory conduct."

that should the challenged law be ultimately upheld, "a permanent injunction should, nevertheless, issue to restrain enforcement of penalties accrued pendente lite . . . ." *Id.* at 337–38. In another case, *Board of Trade City of Chicago v. Clyne*, 260 U.S. 704, the Court similarly enjoined the enforcement of a law pending appeal, and further barred enforcing the law for "any violation . . . of any provision of said act committed during the pendency of this cause in this court." *Id.*

Furthermore, Defendant's position poses due process concerns. *Cf. Marks v. United States*, 430 U.S. 188, 192 (1977). In *Marks*, the defendants were prosecuted for the transportation of obscene materials. Id. at The alleged conduct occurred prior to the Court's decision in *Miller v. California*. *Id.* at 189–90. However, the trial court used the standard provided in *Miller* in its jury instructions. The Court then considered whether the defendants were entitled to more favorable jury instructions under *Memoirs v. Massachusetts*, the standard prior to the Court's decision in *Miller*. *Id.* at 190–91. The Court concluded that the defendants were entitled to jury instructions pursuant to *Memoirs*. While the Ex Post Facto Clause does not apply to the judiciary, the Court reasoned that the concept that "persons have a right to fair warning of that conduct which will give rise to criminal penalties is fundamental to our concept of constitutional liberty." *Id.* at 192–93. Similarly here, if Plaintiffs could face prosecution for conduct undertaken during the pendency of the preliminary injunction, then they could be penalized for acting in reliance on the injunction and judicial pronouncements. *Cf. Id.* at 191–93; *Edgar v. MITE Corp.*, 457 U.S. 624, 660 (Marshall, J., dissenting). In effect, accepting Defendants' argument would render preliminary injunctive relief meaningless.

Defendants further cite caselaw suggesting that, where a preliminary injunction would not "prevent the kind of irreparable injury Plaintiff seeks to prevent," it is not an appropriate remedy. *See* ECF No. 48 at 18 (citing *Coleman v. United States*, No. 5:16-CV-817-DAE, 2017 WL

1278734, at *2 (W.D. Tex. Jan. 3, 2017); *Foy v. Univ. of Tex. at Dall.*, No. 3:96-CV-3406, 1997 WL 279879, at *3 n.1 (N.D. Tex. May 13, 1997). However, Plaintiffs have provided ample evidence that they would encourage voters to vote by mail if there was no threat of criminal or civil prosecution. *E.g.*, Longoria Decl. at 5–8; Hearing Tr. 20:8–17. A preliminary injunction, as discussed, would remove such a threat. Thus, it is an appropriate remedy in this case.

## C.  Balance of the Equities and Public Interest

The threatened and ongoing injury to Plaintiffs outweighs any potential harm that an injunction might cause Defendants. Without a preliminary injunction, Plaintiffs will suffer irreparable injury to their constitutional rights. As a general matter, "injunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church*, 697 F.3d at 298 (citation and quotation marks omitted); *see also RTM Media, L.L.C. v. City of Houston*, 518 F. Supp. 2d 866, 875 (S.D. Tex. 2007) ("It is clearly in the public interest to enjoin an ordinance that restricts the public's constitutional right to freedom of speech."). To overcome the irreparable injury arising from this infringement on Plaintiffs' rights, Defendants must produce "powerful evidence of harm to its interests" to tip the equities in their favor. *Opulent Life Church*, 697 F.3d at 297.

The Attorney General's argues that the public interest weighs against injunctive relief because it "would interfere with the orderly administration of Texas elections." ECF No. 48 at 20. Here, the Attorney General draws on the *Purcell* principle, which stands for the proposition that "federal courts ordinarily should not alter state election laws in the period close to an election." *DNC. v. Wis. State Leg.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). The Supreme Court has recognized that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and

consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell*, 549 U.S. 4–5. In *Purcell*, the Supreme Court reversed a lower court's order enjoining the implementation of a proposition, passed by ballot initiative two years earlier, that required voters to present identification when they voted on election day. In reversing the lower court, the Court emphasized that the injunction was likely to cause judicially-created voter confusion in the face of an imminent election. *Purcell*, 549 U.S. at 2, 6.

As the cases cited by the Attorney General clearly establish, however, the *Purcell* principle's logic extends only to injunctions that affect the mechanics and procedures of election law applicable to voting. *See, e.g.*, *RNC v. DNC*, 140 S. Ct. 1205, 1207 (2020) (extension of absentee ballot deadline); *Mi Familia Vota v. Abbott*, 834 F. App'x 860, 863 (5th Cir. 2020) (mask mandate exemption for voters); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 244 (procedures for authenticating mail-in ballot signatures); *Tex. Alliance for Retired Ams. v. Hughs*, 976 F.3d 564, 566–67 (5th Cir. 2020) (new ballot type eliminating straight-ticket voting); *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 411–12 (5th Cir. 2020) (absentee ballot eligibility requirements); *DNC v. Wis. State Leg.*, 141 S. Ct. at 31 (extension of absentee ballot deadline).

Plaintiffs' requested injunction does not affect any voting procedures. It does not ask the court to change the process for applying to vote by mail or the deadline or eligibility requirements for doing so. Nor does it *require* that election officials start soliciting applications to vote by mail— it simply prevents the imposition of criminal and civil penalties against officials for encouraging people to vote by mail if they are eligible to do so. Accordingly, it is unlikely that the proposed preliminary injunction would lead to the kind of voter confusion envisioned by *Purcell*. The Attorney General raises the possibility that "at least some" voters would be confused by the fact that elections officials were soliciting applications to vote by mail "despite a high-profile law

prohibiting that practice," causing them to "lose trust in the election process." ECF No. 48 at 21. But the Attorney General does not allege that this "confusion" about election officials' speech would disenfranchise anyone, like misunderstandings about voting procedures—deadlines, eligibility, voter identification requirements, polling locations, etc.—are wont to do. Thus, those voters' potential, subjective confusion is clearly outweighed by the irreparable harm that Plaintiffs will suffer absent injunctive relief.

Moreover, unlike an order requiring affirmative changes to the election process before it occurs, an injunction against enforcement proceedings is removed in space and time from the mechanics and procedures of voting. Prosecutions simply do not occur at the polls—they require investigation, evidence, and due process. Because criminal prosecutions and civil penalties necessarily follow the offending conduct in time, the only prospective interest that Defendants can plausibly allege would be impaired by injunctive relief is the deterrent effect of the anti-solicitation provision. Given that their chilling effect on speech is the very feature that likely renders the provisions constitutionally infirm, however, deterring violations is unlikely to serve the public interest. *See Ingebretsen on behalf of Ingebretsen v. Jackson Public Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) (where an enactment is unconstitutional, "the public interest [is] not disserved by an injunction preventing its implementation"); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

Here, the public interest is not served by Texas's enforcement—whether through civil or criminal penalties—of a restriction on speech that Plaintiffs have shown likely violates their fundamental rights under the First Amendment. Their speech has been and continues to be chilled, and the need for relief is urgent, given the fast-approaching deadline for requesting applications

for mail-in ballots. Accordingly, the balance of the equities and the public interest weigh in favor of a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have satisfied their burden of establishing the Court's subject matter jurisdiction over this case and a substantial likelihood that they will succeed on the merits of their claims that the anti-solicitation provision set forth in Section 276.016(a)(1), and as enforced through Section 31.129, constitutes unlawful viewpoint discrimination in violation of the First and Fourteenth Amendments, both facially and as applied to Plaintiffs' speech. The Court further concludes that the irreparable injury Plaintiffs will suffer absent injunctive relief substantially outweighs any harm potentially suffered by Defendants, and that a preliminary injunction will serve the public interest.

It is therefore **ORDERED** that Plaintiffs' Motion for Preliminary Injunction (ECF No. 7) is hereby **GRANTED**.

Defendants Ogg, Garza, and Dick are **ENJOINED** from enforcing Section 276.016(a)(1) of the Texas Election Code against Plaintiffs. No officer, agent, servant, employee, or other person in active concert with Defendants Ogg, Garza, and Dick may enforce Section 276.016(a)(1) against Plaintiffs Longoria and Morgan pending final resolution of this case.

It is further **ORDERED** that all Defendants are **ENJOINED** from enforcing Section 31.129 of the Texas Election Code, as applied to a violation of Section 276.016(a)(1), against Plaintiffs. No officer, agent, servant, employee, or other person in active concert with Defendants may enforce Section 31.129 against Plaintiffs Longoria and Morgan pending the final resolution of this case.

It is further **ORDERED** that Defendants may not criminally or civilly prosecute Plaintiffs for any violations of Sections 276.016(a)(1) and 31.129 of the Election Code committed during the pendency of this lawsuit, even if Sections 276.016(a)(1) and 31.129 are later found to be constitutional.

The Attorney General's oral motion to stay this injunction pending appeal is **DENIED**.

It is so **ORDERED**.

**SIGNED** this February 11, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE